883 F.2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Don R. WATKINS, Plaintiff-Appellant,
v.
Thomas K. TURNAGE, Administrator of Veterans Affairs,
Defendant-Appellee.
 No. 88-3207.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1989.
Decided Aug. 11, 1989.
 
 Jules Fink for appellant.
 Roann Nichols, Assistant U.S. Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Don R. Watkins appeals from an opinion and order by the district court granting summary judgment in favor of Thomas K. Turnage, Administrator of Veterans Affairs. The district court concluded that, while Watkins had established a prima facie case of handicap discrimination, his dismissal was based on a legitimate nondiscriminatory reason which was not a pretext for discrimination. Watkins v. Turnage, Civil No. JH-87-3466, (D.Md. Sept. 29, 1988). Finding no error, we affirm.
 
 I.
 
 2
 Watkins suffers from a mental handicap and has been regarded and treated as mentally retarded at all times pertinent to this action. Though the exact date is in dispute, Watkins began his employment at the Fort Howard Veterans Administration Medical Center (Fort Howard hospital) between 1976 and 1978 as a part-time employee working in the mail room and as a delivery boy. He received a full-time appointment on May 18, 1979. Watkins was converted to a career appointee on May 20, 1982 under 5 C.F.R. Sec. 315.709 (1988). After this conversion, Watkins began working as a housekeeping aide performing janitorial duties. The record indicates that his performance of these duties was satisfactory through his dismissal in August, 1986 and that his mental handicap posed no significant obstacles to his performance.
 
 
 3
 On June 5, 1986, Watkins was convicted for a fourth degree sexual offense under MD.ANN.CODE art. 27, Sec. 464C (1957). The conviction was based on Watkins' sexual molestation of his eleven-year-old niece.
 
 
 4
 On August 8, 1986, Dr. Philip Elkins, Administrator of the Fort Howard hospital, dismissed Watkins from his position stating that such removal was based on Watkins' conviction for a sexual offense. In reaching his decision, Elkins applied the twelve "Douglas factors" which have been established as guidelines for the assessment of penalties for misconduct by employees of federal administrative agencies. See Castella v. Long, 701 F.Supp. 578, 590, n. 17 (N.D.Tex.1988) (citing Douglas v. Veterans Admin., 5 M.S.P.B. 313, 332, 5 M.S.P.R. 280 (1981)).
 
 
 5
 Among the key factors Elkins considered in reaching his decision were: (1) the expression of fear by at least one female employee in working around Watkins after she learned of his conviction; (2) the daily presence of a number of minor females in and around the Fort Howard hospital, including teenage volunteers, visitors and children of resident hospital employees; and (3) Elkins' recognition of the fact that Watkins' continued employment would necessarily place him in contact with these persons on a daily basis.
 
 
 6
 In light of these considerations, Elkins determined that dismissing Watkins was the only alternative to ensure the protection of minor females at the hospital from the threat of future sexual misconduct by Watkins. In his affidavit submitted along with the United States' motion for summary judgment, Elkins describes his significant responsibility to maintain a safe and secure environment at the Fort Howard hospital. Elkins indicates that this responsibility was the sole motivation for his decision to dismiss Watkins after his conviction and disavows any discriminatory motive behind the decision.
 
 
 7
 Watkins unsuccessfully appealed his dismissal to an arbitrator and later to the Equal Employment Opportunity Commission. Watkins then appealed to the United States District Court for the District of Maryland. Judge Joseph C. Howard entered summary judgment for the defendant on Watkins' claim and Watkins appeals to this court.
 
 II.
 
 8
 "An appellate court normally reviews a grant of summary judgment de novo, applying the same standard as the district court." De Leon v. Saint Joseph Hosp., 871 F.2d 1229, 1233 (4th Cir.1989) (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987)). Under Fed.R.Civ.P. 56, a court may grant summary judgment only if there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. This standard has been explained as follows:
 
 
 9
 [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.... [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.
 
 
 10
 Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986)).
 
 III.
 
 11
 Watkins seeks relief pursuant to 5 U.S.C.A. Sec. 2302(b)(1)(D) (West Supp.1989) which prohibits personnel actions or recommendations which discriminate on the basis of a handicapping condition, as proscribed by 29 U.S.C. Sec. 791 (1987), part of the Rehabilitation Act of 1973.[1] In a Rehabilitation Act case involving a contested dismissal, a plaintiff establishes a prima facie case of handicap discrimination by showing: (1) he is a handicapped person; (2) he is an otherwise qualified handicapped person, meaning that despite his handicap, he was performing satisfactorily prior to his dismissal; and (3) he was dismissed. Reynolds v. Brock, 815 F.2d 571, 574 (9th Cir.1987).
 
 
 12
 It is undisputed that Watkins has established a prima facie case of handicap discrimination. Watkins is handicapped within the meaning of the Act, he was performing his janitorial duties satisfactorily up until his dismissal and he was dismissed. Since Watkins has established a prima facie case, the burden of production shifts to the United States to produce a legitimate, nondiscriminatory reason for terminating him. Id. (citations omitted).
 
 
 13
 In order to meet this burden, the United States need only produce admissible evidence which would allow the trier of fact to conclude rationally that the employment decision had not been motivated by discriminatory animus. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). The United States has produced evidence that Elkins' decision to dismiss Watkins was based solely on his conviction. The stated reasons behind Elkins' decision derive from his recognition of the fact that Watkins' continued employment would place him in daily contact with minor females of similar age and vulnerability to Watkins' eleven-year-old niece. As explored in oral argument, aside from the impracticable alternative of appointing a supervisor to shadow Watkins' every step while on the job, Elkins saw Watkins' dismissal as the only alternative to ensure the safety of the minor females in and around the hospital. Thus, the district court correctly found that the United States met its burden of production.
 
 
 14
 In anticipation of this finding, Watkins claims that the stated reasons for his dismissal were a pretext for discrimination against his handicap. The Supreme Court has indicated that once the government has met its burden, the plaintiff must be afforded a full and fair opportunity to demonstrate that the presumptively valid reasons given were merely a pretext for discrimination. Id. at 258. "Pretext" is defined as an "ostensible reason or motive assigned or assumed as a color or cover for the real reason or motive; false appearance or pretense." Black's Law Dictionary 1069 (5th ed. 1987).
 
 
 15
 Watkins asserts that no nexus exists between his conviction and his ability to perform his janitorial duties sufficient to threaten the "efficiency of the service" of the Veterans Administration as required for employee actions under 5 U.S.C. Sec. 7513(a) (1987).[2] Based on his assertion, Watkins contends that the stated reasons for Elkins' decision must have been a pretext for discrimination. Watkins adduces no other evidence of pretext concealing a discriminatory animus behind his dismissal.
 
 
 16
 The government generally bears the burden of demonstrating the nexus between an employee's misconduct and a threat to the efficiency of the service. Graybill v. United States Postal Serv., 782 F.2d 1567, 1573 (Fed.Cir.1986), cert. denied, 479 U.S. 963 (1986). However, in certain circumstances, the misconduct may be so egregious that "the nexus between the conduct and the efficiency of the service is presumed." Id. In determining when this presumption applies, courts have determined employee misconduct to be sufficiently egregious when "it is reasonable to conclude that it would directly relate either to the employee's ability to perform approved tasks or to the agency's ability to carry out its mission." Id. (citing Phillips v. Bergland, 586 F.2d 1007 (4th Cir.1978)).
 
 
 17
 In Graybill, the court affirmed an application of the nexus presumption where a postal employee was dismissed after his indictment and subsequent plea bargain on charges that he engaged in sexual intercourse with his minor stepdaughter. In arriving at its decision, the court noted the facts that Graybill's fellow employees found it difficult to work with him after learning of his conviction, Graybill's job responsibilities brought him into regular contact with children, and his postal route took him by several local schools. Id. at 1574. The court found no error in the reviewing board's conclusion that a nexus between the employee's misconduct and the efficiency of the source could be presumed and indicated that the evidence was sufficient to demonstrate the required nexus without the presumption. Id.; see also Allred v. Department of Health & Human Serv., 786 F.2d 1128 (Fed.Cir.1986) (employee's misconduct of sexually molesting a twelve-year-old boy deemed sufficiently egregious to invoke the nexus presumption).[3]
 
 
 18
 Despite Watkins' efforts to distinguish the above cases, courts have consistently upheld dismissals of employees who have engaged in sexual misconduct with minors. These courts have done so either by applying the presumed nexus between the misconduct and the threat to the efficiency of the service or finding that the employer had demonstrated the required nexus. In this case, Watkin's conviction and the nature of his work environment raise the same concerns about Watkins that the court faced with the postal employee in Graybill.
 
 
 19
 The Graybill court addressed many of the same issues presented in the case at bar. As with the employee in Graybill, the nature of Watkins' conviction for sexually molesting his eleven-year-old niece is sufficiently egregious to support a presumption of the nexus between the conviction and the threat to the efficiency of the service and uphold Watkins' dismissal. Even if the presumption were not invoked, the United States has sufficiently demonstrated the nexus between Watkins' conviction and the threat to the efficiency of the service under Section 7513(a).
 
 
 20
 As indicated above, there is evidence that Watkins' conviction had affected employee morale. More importantly, as in Graybill, there exists the same concern that Watkins' job responsibilities would place him in regular contact with children in and around the Fort Howard hospital, exposing them to a degree of risk of sexual misconduct. Despite the differences of opinion as to the degree of the threat posed by Watkins to these children, Elkins and the Veterans Administration have a legitimate, nondiscriminatory interest in removing this threat to the efficiency and safety of the hospital.
 
 
 21
 We share the sentiment of the district court and recognize that this is a sad case. However, there is no evidence that Watkins was dismissed because of his handicap nor that the stated reasons for his discharge were a pretext for discrimination. Watkins was dismissed because of his conviction for a sex offense in compliance with Section 7513(a). Accordingly, we affirm.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The Rehabilitation Act of 1973, Pub.L. No. 93-112 Sec. 2, 87 Stat. 357 (1973) (current version of 29 U.S.C. Sec. 701 (1987) et seq.), is a comprehensive statutory scheme directed toward the assistance of handicapped persons. The Act is designed to facilitate the development and implementation of programs for vocational rehabilitation and independent living with the guarantee of equal opportunity and access to such programs for these persons. It encourages the hiring of handicapped persons and proscribes handicap discrimination
 2 U.S.C. Sec. 7513(a) (1987) provides: "Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service."
 
 
 [3]
 The nexus presumption has not been applied in all employee appeals from dismissal based upon proof of their sexual molestation of minors. Nevertheless, courts have affirmed employee dismissals on these bases citing their fellow employees' loss of trust and confidence in them and the corresponding effect on employee morale were these employees retained after their sexual offenses. See Bonet v. United States Postal Serv., 712 F.2d 213 (5th Cir.1983); Stalans v. National Sec. Agency, 678 F.2d 482 (4th Cir.1982)