Mitchell **HARSHBARGER,** Plaintiff,

v.

**SIERRA PACIFIC POWER COMPANY,** Defendant.

**No. CVN98–462 ECR (PHA).**

United States District Court, D. Nevada.

Sept. 20, 2000.

---

Anne Vohl, Julia Vohl, Vohl & Vohl, Reno, NV, for Plaintiff.

Neil Alexander, Hicks & Walt, Reno, NV, for Defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

This is an employment discrimination case dealing with discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA") as well as claims of privacy, defamation, and retaliation for filing a workers' compensation claim. The defendant filed a motion for summary judgment (# 35) on October 13, 1999. The plaintiff filed an opposition (# 40) and the defendant replied (# 45).

### Background

This case arises out of the termination of plaintiff's employment from Sierra Pacific Power Company. The plaintiff suffered a series of workplace injuries, during the last several years of his employment, that are at issue in this case.

In 1992–1993, plaintiff was a light working foreman and was required to lift 200–300 pound meter boxes. During this time frame, plaintiff injured his elbows. The plaintiff returned to work without any physical restrictions. In March 1994, the plaintiff began working in the position of Heavy Working Foreman, and held that job until the end of his employment. In 1994, the plaintiff began having problems with his elbows and in 1995 he had surgery on both his elbows. Plaintiff was placed on workers' compensation leave from approximately August of 1995 to October of 1996. In August of 1996, plaintiff received a "permanent" restriction of no lifting greater than forty-eight pounds. In October of 1996, plaintiff obtained a full release form his doctor for a two-month trial period. During these two months, plaintiff was released to the Heavy Working Foreman position without any physical restrictions, but was told to work within his limitations.

On March 18, 1997, plaintiff tore his rotator cuff. Plaintiff was placed on light-duty work. In August 1997, he had surgery and took time off from work. The plaintiff returned to work around the end of September of 1997 to light-duty work.

Plaintiff did not want to continue performing the light-duty work he was assigned and requested another assignment. Plaintiff's supervisors met to discuss plaintiff's options, one of which was to enter a pilot vocational rehabilitation program. Plaintiff opted to enter the pilot program.

While plaintiff was still off work recovering from his shoulder injury, defendant received certification from plaintiff's doctor, Dr. Prutzman, that plaintiff had a permanent 25 pound lifting restriction for his right arm and no reaching above the shoulder. The defendant alleges that it conducted an internal search for comparable alternative positions that plaintiff could perform with the 25 pound lifting limit. The defendant states that it was not able to find such a position and therefore decided to "officially" refer plaintiff to vocational rehabilitation and terminate his employment because plaintiff could not perform the Heavy Working Foreman duties with his lifting restriction. On January 28, 1998, the plaintiff was terminated. Plaintiff then filed suit.

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.

*Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

·The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a while. *Id.*

## B. PRIMA FACIE CASE

◼ The ADA prohibits employment discrimination against qualified persons with disabilities. 42 U.S.C. § 12112(a). The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). An employment termination claim under the ADA requires proof of three elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is qualified; that is, with or without reasonable accommodation, she can perform the essential functions of the job; and (3) her employer terminated her because of her disability. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). The plaintiff has the burden to demonstrate that she can perform the essential functions of her job with or without reasonable accommodation. *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990).

Defendant argues that Plaintiff has not brought forth sufficient evidence to support the requisite prima facie case of discrimination under the ADA because the plaintiff is not disabled as defined by the ADA and alternatively, that the plaintiff is not a qualified individual. We do not address the issue of whether plaintiff is a qualified individual because we find that plaintiff does not meet the ADA definition of disabled.

### 1. Disability

The ADA defines "disability" as follows: The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2). Plaintiff does not challenge the statement that he does not presently have an actual disability under section 12102(2)(A). Instead, Plaintiff argues that he comes within prong (C) of the definition of "disability" listed above: being regarded as having such an impairment.[1]

■ Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." § 12102(2)(A). There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2149, 144 L.Ed.2d 450 (1999). The rationale behind the "regarded as" prong is to protect individuals who may be rejected form a job due to myths, fears and stereotypes associated with disabilities. 29 C.F.R. pt. 1630, app. 1630.2(1) (1996).

■ Plaintiff asserts that he was regarded as disabled by his employer in the major life activity of working. The plaintiff alleges that Sierra Pacific erroneously relied upon his doctor's medical certification and therefore regarded him as disabled. The plaintiff claims that there was confusion as to the extent of his physical capacities with regard to lifting and reaching and that Sierra Pacific "fundamentally misunderstood and exaggerated" the limi-

tations the shoulder surgery imposed on plaintiff.

■ In determining whether an individual is disabled under subsection (C) it is the employer's perception that is at issue. *See* 1 HENRY H. PERRITT, AMERICANS WITH DISABILITIES ACT HANDBOOK 50, n. 83 (1997) (citing COMPLIANCE MANUAL ¶¶ 902.7–902.8) It is not necessary that the individual alleging discrimination have a disability or impairment. *Id.* In this case, the defendant's perception of plaintiff's impairment was not based upon speculation, myth, or stereotype. The defendant's perception was based upon a doctor's written assessment of the plaintiff's physical abilities. An employer's decision to terminate an employee "based upon the physical restrictions imposed by [a] doctor … does not indicate that [the] employer regarded [the employee] as having a substantially limiting impairment." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995).

The defendant relied upon plaintiff's doctor's certification that plaintiff had a permanent lifting restriction of 25 pounds and a reaching restriction of no reaching above the shoulder in his right arm. Based upon the restrictions imposed by plaintiff's doctor defendant concluded that plaintiff could not carry out the job of Heavy Working Foreman. Defendant's decision to terminate plaintiff based upon the physical restrictions imposed by his doctor, when no jobs accommodating those restrictions were currently available, does not indicate that defendant regarded plaintiff as having a substantially limiting impairment.

■ The major life activity at issue is working. Plaintiff alleges that defendant regarded him as disabled in the major life activity of working. When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that the plaintiff allege that he is unable to work in a broad class of jobs. *Sutton v. United*

---

1. *See* Plaintiff's Opposition, p. 15, 1.14–15.

*Air Lines Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999). The EEOC regulations define the term "substantially limits" when referring to the major life activity of working, as follows:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i)(1998). The EEOC further identifies several factors that courts should consider when determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." 29 C.F.R. § 1630.2(j)(ii)(A),(B). To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. *Sutton,* 119 S.Ct at 2150. If jobs utilizing an individual's skill are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. *See id.*

The plaintiff has failed to allege that his lifting and reaching restrictions are regarded as an impairment that substantially limits him in the major life activity of working. The plaintiff has alleged that defendant viewed plaintiff's limitations as precluding him from holding the position of Heavy Working Foreman. This position is a single job, and plaintiff has not produced any evidence that he is limited in a substantial class of jobs. In addition, the evidence that plaintiff seeks to introduce, the report prepared by Ed Howden, a certified rehabilitation counselor, shows that plaintiff is not limited in a substantial class of jobs. The report states that plaintiff is not precluded from a substantial class of jobs in the Washoe County Area because the plaintiff's skills are transferable. *See* Defendant's Reply, Exh. AA, p. 3.

**2. ADA Retaliation**

■ To establish prima facie case of retaliation under the ADA, a plaintiff must establish that: (1) the employee was engaged in activity protected by the ADA; (2) the employer was aware of that activity; (3) an employment action adverse to the plaintiff occurred; and (4) that there existed a causal connection between the protected activity and the adverse employment action. *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 233 (2d Cir. 2000) " '[A] plaintiff need not establish that the conduct he opposed was actually a violation of the statute as long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law.' " *Id.* at 233 (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999)).

Once a prima facie case has been established, the employer has the burden of articulating a legitimate nondiscriminatory reason for the challenged employment decision. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997). The plaintiff then must "demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

■ The defendant does not dispute that the plaintiff satisfies the first two elements of a prima facie case. The defendant argues that plaintiff has not shown that there is a causal connection between his termination and his filing of an ADA suit. The plaintiff may prove the "causal connection" element either by direct evidence of the employer's discriminatory animus, or by indirect evidence which supports an inference of discriminatory

causation. *Wrenn v. Gould,* 808 F.2d 493, 500–01 (6th Cir.1987). The threshold for establishing a causal connection is not high. A plaintiff is only required to demonstrate that the protected activity and the adverse action were not wholly unrelated. *See Farley v. Nationwide Mutual Ins. Co.,* 197 F.3d 1322, 1336 (11th Cir. 1999) (citing *Clover v. Total System Servs.,* 176 F.3d 1346, 1354 (11th Cir.1999)). A plaintiff satisfies this element if he provides sufficient evidence that the decisionmaker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action. *See id.*

The plaintiff began raising the ADA to management employees in August of 1997. The plaintiff's supervisor, McAllister, knew that plaintiff was asserting his ADA rights. In January 1998, plaintiff was terminated. There is a temporal proximity between the time the plaintiff began raising the ADA and the time he was fired. This short period of time is sufficient to create an inference of retaliation. *See Mathews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1166 (8th Cir.1998) (finding two month time lapse between protected activity and discharge created inference of retaliation in ERISA context).

Once a prima facie case has been established, the defendant must proffer a legitimate nondiscriminatory reason for the adverse employment action. The defendant has stated that plaintiff was terminated because he had permanent physical restrictions that prevented him from performing his job as Heavy Working Foreman and that defendant did not have any other jobs available which the plaintiff could perform. This is a nondiscriminatory reason on its face. Therefore, the plaintiff bears the burden of offering evidence that the defendant's proffered reason is pretextual.

While close temporal proximity between the plaintiff's filing of his complaint and defendant's adverse action is a factor in determining pretext, that alone is not sufficient to raise a triable issue of fact. *See*

*Pastran v. K–Mart Corp.,* 210 F.3d 1201, 1206 (10th Cir.2000); *see also* Butler v. City of Prairie Village, Kan., 172 F.3d 736, 752 (10th Cir.1999) (holding that close temporal proximity is a factor in showing pretext for retaliation in violation of the ADA).

■ After reviewing the record, we find that plaintiff has produced insufficient evidence of pretext. First, the plaintiff has alleged that his termination resulted from the defendant's reliance on Dr. Prutzman's medical certification. The plaintiff has failed to show that Sierra Pacific acted unreasonably or in erroneously in relying on the plaintiff's doctor's certification. The employer reasonably relied on the doctor's certification.

Second, the record shows that plaintiff was not the first employee to be put through vocational rehabilitation. (See Leslie Bell, Deposition, Defendant's Reply, Exh. CC, p. 33:13–14). The plaintiff then argues that defendant's return to work policy was not followed in his case. The policy states that "The employee will work in the 'light-duty' job situation until his/her physician approves a full release, at which time the employee will return to his/her regular job assignment." Plaintiff was not returned to his regular job assignment because he never received a full release from his doctor. In addition, the plaintiff stated in his deposition that he knew for several years before he was terminated that it was defendant's policy that if an employee could not perform their job because of physical restrictions, and they entered vocational rehabilitation, then they would be terminated. (Motion for Summary Judgment, Exh. A, pp. 221–22). Therefore, defendant did not create this policy just in plaintiff's case.

**3. Hostile Work environment**

The Ninth Circuit has not recognized a hostile work environment claim under the ADA. *See Leland v. United States Bank National Association,* No. CV 98–454, 1999 WL 778569, *7 (D.Or. Sept.23, 1999).

However, other courts have acknowledged the possibility of such a claim only for the sake of argument. *See, e.g., Wallin v. Minnesota Dept. of Corrections,* 153 F.3d 681, 687–88 (8th Cir.1998); *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998). These courts applied the Title VII framework analysis to the hostile work environment claims under the ADA because the "Supreme Court has held that language in Title VII that is almost identical to ... language in the ADA [which] creates a cause of action for a hostile work environment." *Walton v. Mental Health Ass'n,* 168 F.3d 661, 666 (3d Cir.1999). For purposes of this motion, this court will assume, without deciding, that such a cause of action exists and the elements are similar to those required under Title VII.

 In order to establish a prima facie case of hostile work environment based on disability, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was subjected to verbal or physical harassment because of his disability; (3) the conduct was unwelcome; and (4) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995). In determining whether the conduct was sufficiently severe or pervasive, the plaintiff must prove both that he subjectively felt the conduct was abusive and that a reasonable person would find the conduct was hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The objective reasonable person standard is measured by what a reasonable person with the same fundamental characteristics would have considered abusive. *Fuller,* 47 F.3d at 1527. Factors a court may consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

We find that there is no genuine issue of material fact on the hostile work environment claim. First, the plaintiff cannot satisfy the first prong of the prima facie case, that he is a qualified individual with a disability. We have held above that the plaintiff was not regarded as disabled under the ADA. In addition, the plaintiff was not subjected to conduct which was sufficiently severe or pervasive so as to render his work environment objectively hostile.

 The plaintiff first argues that a hostile work environment existed based on the comment made by a supervisor in front of the plaintiff and others stating: "Why do we get all the lazy, crippled worthless people over here to help us out?" The record shows that this was an isolated comment that was not made directly to plaintiff. It does not establish a pervasive hostile work environment.

 Plaintiff next argues that the defendant's decision to move him into a very public room and asking him to remain at his work station created a hostile work environment. These incidents are not sufficiently severe or pervasive. Moving an employee's desk or reassigning an employee into a new work area does not constitute actionable harassment. Asking plaintiff to remain at his desk, also does not constitute harassment. In addition, these actions are unrelated to his disability.

 Plaintiff also argues that coworkers teased him and made comments to him as he sat at his desk doing light duty work. The comments made by co-workers included "we have a new secretary", "where is your dress?", "we have a new teacher." These comments are unrelated to his disability. The record shows that these comments were made by co-workers in jest to any employee light duty work. There were not made solely to plaintiff and were not so severe and pervasive as to interfere with plaintiff's job performance. (*See* Defendant's Reply, Bianco Depo., Exh. GG, p. 16, 11.16–21) In addition, these comments were made while plaintiff was on light duty

before his doctor issued a medical certification stating that plaintiff had a permanent 25 pound lifting restriction. The plaintiff has failed to establish a hostile work environment claim. The comments that plaintiff relies on are not extreme or pervasive.

### Conclusion

This Court finds that plaintiff fails to meet the definition of disability under the ADA. In addition, the plaintiff has failed to create a genuine issue of material fact on his claims of ADA retaliation and hostile work environment.

The remaining claims, defamation, retaliation for filing a workers' compensation claim, intrusion upon seclusion, and false light, are state claims.

***THEREFORE, IT IS HEREBY OR-DERED THAT*** defendant's motion for summary judgment is ***GRANTED*** **IN PART** as to all federal **ADA CLAIMS.** We decline to exercise jurisdiction over the state supplemental claims.

The clerk shall enter judgment in favor of defendant and against plaintiff.