See also 10 M.S.P.B. 212, 11 M.S.P.R. 244.

**Barbara L. REYNOLDS, Esq.,**
**Plaintiff-Appellant,**

v.

**William E. BROCK, Secretary of Labor, Bart Heff, Regional Representative; William Buhl, Regional Administrator, Employment Standards Administration, U.S. Department of Labor, Defendant-Appellees.**

**No. 86–1571.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1986.

Decided April 22, 1987.

As Amended May 20, 1987.

Lawrence J. King, San Francisco, Cal., for plaintiff-appellant.

Ms. Freddi Lipstein, San Francisco, Cal., and Joann M. Swanson, San Francisco, Cal., for defendants-appellees.

Before CHOY, GOODWIN and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Barbara Reynolds appeals from the district court's summary judgment dismissing her claim that she had been discharged from her job at the Department of Labor as a result of her physical handicap in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The district court rendered summary judgment in favor of the Department of Labor on the grounds that Reynolds was not a handicapped individual for purposes of the Rehabilitation Act and that she failed to raise a genuine question of material fact regarding her employment discrimination claim. We reverse the district court's order granting summary judgment and remand.

## BACKGROUND

In July 1979, the Department of Labor Wage-Hour Division in San Francisco hired Reynolds as a clerk-typist (GS–5) in the Farm Labor Contractor Registration Unit. Her primary duty was to process applications for certificates of registration submitted on farm labor contractors and their employees. In addition to processing applications, the position required Reynolds to type, distribute mail, and complete periodic reports.

A few months after taking the job, Reynolds suffered an epileptic seizure at work. She had not told anyone at work about her epilepsy for fear of being denied the job. Reynolds subsequently suffered two more seizures at work.

After her first seizure, Reynolds made several job-related requests to her supervisor. She did not attribute her requests to her epilepsy. She requested additional training, the assistance of a GS–3 clerk-typist, and a change in her working hours from 8:30 a.m.–5:00 p.m. to 7:30 a.m.–4:00 p.m. The Department denied each of these requests.

Guy Guerrero, Reynolds's Supervisor, evaluated her job performance ninety days after Reynolds began working for the Department of Labor. He found her accurate, but less productive than average. Reynolds told Guerrero that the evaluation was unfair and that she needed more training. Guerrero destroyed the evaluation. In November 1979, Reynolds applied for and was denied a position as a wage analyst. Guerrero prepared an evaluation of Reynolds's work as part of the selection process for her requested promotion. He noted her good public relations skills and lagging productivity. In April 1980, Guerrero again evaluated Reynolds. He rated her work satisfactory but told her she must improve. On April 23, Guerrero gave Reynolds a ninety-day notice of unacceptable work performance. He told her that to retain her job she had to process at least ten applications and issue at least five certificates in each eight-hour day. The parties dispute the reasonableness of these requirements. During the following ninety-day period, Guerrero evaluated Reynolds three times, each time rating her performance unsatisfactory. On August 21, the Department of Labor issued a notice of proposed adverse action informing Reynolds that she would be discharged after thirty days. The Regional Administrator offered Reynolds a position as a receptionist. Although the position was classified as a GS–4, below Reynolds's GS–5 clerk-typist classification, Reynolds would have received a slight increase in pay. Reynolds refused the receptionist position. The Department of Labor discharged her on September 26, 1980.

Reynolds filed a petition with the Merit System Protection Board (MSPB) on October 6, 1980. She alleged that the Department of Labor had discriminated against her because of her epilepsy and had failed to train her adequately. The presiding officer denied her claim. The MSPB affirmed the decision. Reynolds then filed a charge of handicap discrimination with the Equal Employment Opportunity (EEO) counselor of the Department of Labor. The EEO office rejected her charge. She appealed the EEO decision to the district court. The district court granted summary judgment for defendants.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo. *Darring v. Kin-*

*cheloe,* 783 F.2d 874, 876 (9th Cir.1986). We apply the same standard applied by the district court under Fed.R.Civ.P. 56(c): whether there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. In applying this standard, we must consider the evidence in the light most favorable to the nonmoving party. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986); *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir. 1983).

## ANALYSIS

I. *Epilepsy as a Handicap Under the Rehabilitation Act of 1973*

The Rehabilitation Act of 1973 provides: No *otherwise qualified handicapped individual* in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency....

29 U.S.C. § 794 (emphasis added).

The district court held that Reynolds was not handicapped for purposes of the Rehabilitation Act, because she "has never shown that her epilepsy prevented her from performing the physical tasks involved in her job, i.e., sitting at a desk, preparing forms, typing, and answering the telephone." In so holding, the district court confused the definition of "handicapped individual" with the definition of "otherwise qualified" individual. To fall within the protection of 29 U.S.C. § 794, an individual must be both "handicapped" and "otherwise qualified." The Supreme Court has defined "an otherwise qualified" individual as "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (hearing impaired applicant not qualified to enter nurse training program). 29 U.S.C. § 706(7) defines a "handicapped individual." Section 706(7)(B) provides:

[T]he term "handicapped individual" means ... any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

The district court's approach would preclude any "otherwise qualified individual" from being classified as handicapped because, under its analysis, anyone who could meet all of a job's requirements, and therefore was "otherwise qualified," would not be handicapped. Reynolds is "otherwise qualified." She may also be handicapped. A plaintiff need not prove that she is incapable of doing her job to prove that she is handicapped.

■ Contrary to the district court's holding, epileptics are handicapped individuals. In *Mantolete v. Bolger,* 767 F.2d 1416, 1421–23 (9th Cir.1985), this court determined that epileptics are handicapped individuals for purposes of the Rehabilitation Act of 1973. Although *Mantolete* involved an epileptic who was denied employment, its rationale applies with equal force to an epileptic who is discharged from employment.

Other courts that have faced this issue have also held that epilepsy is a handicap for purposes of the Rehabilitation Act. *E.g., Akers v. Bolton,* 531 F.Supp. 300, 315 (D.Kan.1981); *Drennon v. Philadelphia Gen. Hosp.,* 428 F.Supp. 809, 815 (E.D.Pa. 1977); *Smith v. Adm'r. of Veterans Affairs,* 32 Fair Employment Practice Cases (BNA) 986, 989 (C.D.Cal.1983); *Office of Federal Contract Compliance Programs, U.S. Department of Labor v. Ford Motor Co.,* 3, Recommended Decision and Order, Case No. 80–OFCCP–32, 3 (Oct. 4, 1985).

The Rehabilitation Act defines a handicapped individual as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities...." 29 U.S.C. § 706(7)(B). The regulations promulgated under the Act define major life activities as "functions, such as caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c).

Reynolds's epilepsy substantially limits her ability to work. Even though medication controls her seizures, federal and state regulations and policies restrict the types of jobs available to her. People with any history of epilepsy are ineligible to drive trucks in interstate commerce. 49 C.F.R. § 391.41(b)(8). Epileptics are ineligible for "hazardous" jobs in the federal civil service unless they have been seizure-free without medication for two years. Office of Personnel Management, *Handbook of Selective Placement of Persons with Physical and Mental Handicaps in Federal Civil Service Employment*, OPM Doc. 125–11–3, 63 (1981). The military will not consider applications from epileptics until they have been seizure-free without medication for five years. Many states render epileptics ineligible for driver's licenses unless they have been seizure-free for a specified period. Epilepsy Foundation of America, *Legal Rights of Persons with Epilepsy* 7 (1985). Unable to drive to work, many epileptics have severely limited job opportunities. The unemployment rate among fully employable epileptics is more than two times the national average. The underemployment rate for epileptics is perhaps higher still. Commission for the Control of Epilepsy and Its Consequences, United States Department of Health, Education and Welfare, 1 *Plan for Nationwide Action on Epilepsy*, 85 (1977).

Both the Rehabilitation Act of 1973 and the decisions of the courts that have interpreted it lead to the inescapable conclusion that epilepsy is a handicap. Therefore, Reynolds qualifies as a handicapped individual.

## II. *The District Court's Grant of Summary Judgment*

■ To establish a prima facie case of wrongful termination under the Rehabilitation Act, Reynolds must demonstrate both (1) that she is an "otherwise qualified handicapped individual" for purposes of the Act and (2) that she was terminated because of her handicap. If she can establish a prima facie case of wrongful termination, then the burden of producing evidence shifts to the defendant, who must demonstrate a legitimate nondiscriminatory reason for terminating her. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *see Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Reynolds is handicapped and otherwise qualified. Therefore, for a court to uphold summary judgment on the ground that Reynolds could not present a prima facie case, it must find that there were no genuine issues of material fact regarding her assertion that she was terminated because of her handicap.

■ Two of Reynolds's allegations, contradicted by defendants, demonstrate that her wrongful discharge claim presented genuine issues of fact: first, her assertion that her supervisors, Guerrero, Buhl, and McKay, were overtly hostile to her after her handicap was discovered; and, second, her assertion that the production requirements set for her during her ninety-day probation period were unrealistically high.

These are undeniably factual issues, and they are undeniably in dispute. They are material because, if Reynolds's allegations are true, they are strong evidence that she was discharged on account of her handicap. Because Reynolds is handicapped and qualified, the motive-of-discharge issue is the decisive inquiry in determining whether Reynolds can establish a prima facie case and, therefore, an issue that may have to be addressed in deciding the case. *See Anderson*, 106 S.Ct. at 2510.

Despite the potential materiality of the motive-of-discharge issue, summary judgment would still have been proper if the defendants had demonstrated that they could rebut any prima facie case with evidence of a legitimate nondiscriminatory reason for termination. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As evidence of a legitimate reason for termination defendants offer Reynolds's low productivity. Ordinarily this might suffice, but in this case the low productivity claims are undermined by Reynolds's assertion that her supervisors set unrealistically high performance goals and impeded her attempts to achieve them. In these circumstances, evidence of low productivity does not foreclose the possibility of the existence of a genuine issue of material fact.

Moreover, because Reynolds was handicapped within the meaning of the Rehabilitation Act, federal regulations impose on her employer an affirmative duty to attempt reasonable accommodation of her epilepsy. 29 C.F.R. § 1613.704; 28 C.F.R. § 41.53; 45 C.F.R. § 84.12; *See Mantolete,* 767 F.2d at 1423; *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. 1981) (burden of proving inability to accommodate rests with employer). Defendants argue that, because Reynolds's work performance was unrelated to her epilepsy, the Department of Labor had no duty to accommodate her. Reynolds, however, disputes the assertion that her work performance and her handicap were unrelated. In any event, once a prima facie case of discrimination has been established, whether an employer has attempted in good faith to initiate reasonable accommodation becomes a genuine issue of material fact. *Proctor v. Consol. Freightways Corp.,* 795 F.2d 1472, 1476 (9th Cir.1986) (employer has a good faith duty to attempt to accommodate employee's religious beliefs under Title VII).

For the foregoing reasons, this case was not appropriate for summary judgment. REVERSED and REMANDED for further proceedings consistent with this opinion.