Estella LUCERO, Plaintiff–Appellant,

v.

Dennis B. HART, Rugh J. Papp, and Susie Mitchell, Defendants–Appellees.

No. 88–15524.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1989.

Decided Oct. 3, 1990.

Kevin W. Harris, Mastagni, Holstedt & Chiurazzi, Sacramento, Cal., for plaintiff-appellant.

L.B. Elam, County Counsel and John F. Whisenhunt, Deputy County Counsel, County of Sacramento, Sacramento, Cal., for defendants-appellees.

Before CHAMBERS, Senior Circuit Judge, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Appellant Estella Lucero was hired by the County of Sacramento under its Career Opportunities Development Rehabilitation Program. She was subsequently terminated after county officials learned she had been appointed to a permanent position for which she did not meet the minimum qualifications and reasonable efforts to accommodate her failed. Appellant subsequently brought a claim against three of the county officials under 42 U.S.C. § 1983 and the Rehabilitation Act of 1973. The district court granted summary judgment on both claims. Jurisdiction is proper under 28 U.S.C. § 1291. We affirm.

## FACTS AND PROCEDURAL HISTORY

On or about November 17, 1986, appellant Estella Lucero was hired as a re-entry worker by the County of Sacramento under the Sacramento County Career Opportunities Development–Rehabilitation Program. Under the program, the county agrees to place clients of the State Department of Rehabilitation in county positions in return for funding from the state for 90% of the cost of such positions. Re-entry workers such as appellant are placed in county positions for a six month training period which may be extended for an additional period of up to three months. At the end of this training period the re-entry worker may be appointed to an entry level position, at the county's option, if the worker meets the minimum qualifications of that position. Upon such appointment, the training period is treated retroactively as the employee's probationary period.

Appellant was assigned to the Department of Social Services as a typist clerk. During the training period appellant received three satisfactory evaluations. The minimum qualifications for a permanent typist clerk position include the ability to type 45 words per minute (wpm). Toward the end of her training period appellant submitted a typing certificate from Sacramento City College certifying that she typed 45/wpm. Effective sometime around May 17, 1987, appellant was appointed to a permanent position as a typist clerk. Appellant contends she had difficulty adjusting to her new position due to harassment from co-workers.

Sometime in June, Susie Mitchell, Chief of Special Employment and Affirmative Action for the County, learned that appellant's typing test had been graded incorrectly and that her corrected score was only 44/wpm, thus making her ineligible for her position. A re-test was arranged for appellant, and transportation to the test site was provided. These events produced an extreme stress reaction in appellant, resulting in a test score of only 19/wpm.

Unsure of what action to take next, Mitchell consulted with Ruth Papp, Personnel Officer for the Sacramento County of Social Services, and Larry Jones of the County Counsel's office. It was agreed that appellant's appointment would be rescinded, she would be re-instated as a re-entry level worker and given time to re-take the typing test. Provided she passed the test, appellant would then be reappointed to her permanent position.

. On July 7, 1987, Papp sent a letter to appellant informing her of the decision to rescind her appointment and informing her that she had until July 10 to pass the typing test. Upon learning that appellant was not at work, Papp directed appellant's supervisor to call appellant at home and read her the contents of the letter. The parties dispute whether this call was made on July 7 or July 8. Lucero did not respond to the county, and her employment was terminated on July 10, 1987.

On July 23, 1987, Papp learned for the first time of appellant's emotional handicap. At this point Papp offered to hold appellant's position open for a "reasonable time" to allow her to pass the typing test. Subsequently, a deadline for holding the position open was set at September 12.

Despite repeated efforts by Ms. Papp to elicit a response from appellant or appellant's union representative, Miriam Doonan, no response was forthcoming.

Mitchell first learned of appellant's emotional handicap on July 17. Mitchell was at the meeting on July 23 where Papp offered to hold appellant's position open for a "reasonable time." After July 23 Mitchell made several attempts to place appellant in another clerical position with the county. In an August 13 letter Mitchell requested that appellant contact her by September 15 to arrange to retake the typing test. Appellant did not respond. In a letter dated August 28, Mitchell informed appellant of a clerical position that did not involve typing, and gave appellant the name of an individual to contact in order to arrange an interview. Appellant did not respond. On October 26 Mitchell telephoned appellant at home regarding eight clerical positions that were open with the county. Appellant was not home, so a message was left with an unidentified male. Appellant did not respond.

Throughout July, August, and September, appellant was suffering from severe emotional and physical problems. Her husband had a heart attack on July 5, though there is no contention that Mitchell or Papp were aware of this. Appellant went on foodstamps on September 6. In October appellant was able to obtain a full time job with the state of California. The following month appellant filed a complaint under 42 U.S.C. § 1983 against Papp and Dennis B. Hart, Director of Sacramento County Department of Social Services, alleging a violation of her due process rights for failure to provide pre-disciplinary hearing and post-disciplinary appeal incident to her termination. The county responded by providing appellant back pay from the date of her termination to the first day of her employment with the state. Additionally, appellant was offered reinstatement to her former position. This offer was refused.

In March 1988, the complaint was amended adding Mitchell as a defendant and adding a cause of action under the Rehabilitation Act of 1973. On September 22, 1988, the district court entered summary judgment in favor of defendants. This appeal followed:

## DISCUSSION

A grant or denial of summary judgment is a question of law reviewed *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

### A. § 1983 Claim/Qualified Immunity

Appellant claims an entitlement to a pre-termination administrative hearing as well as a post-termination appeal. Appellant contends that defendants' failure to provide these hearings violated her Fourteenth Amendment due process rights and entitles her to relief under § 1983.

The procedural safeguards of the Fourteenth Amendment protect against the deprivation of interests that an individual has acquired in specific benefits. *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548. In order to have a property interest in a benefit, a person must have more than a need, desire or expectation of it, they must have a legitimate claim of entitlement to it. *Id.* at 577, 92 S.Ct. at 2709. A party's expectation of continued employment may be based on rules or understandings. *Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1409. Entitlements based on rules arise from statutes, ordinances, regulations or express or implied contracts, while entitlements based on understandings must be mutually explicit. *Id.*

There is no dispositive law in California on the issue of whether an individual has an entitlement to a job which was acquired in good faith but pursuant to a mistake. As a result, there can be no entitlement based on a rule, regulation or statute.[1]

---

1. If anything, California law would indicate there is no entitlement. *See* Cal.Govt.Code § 19257.5 (appointments to civil service made and accepted in good faith but pursuant to mistake of law or fact are voidable within one year of the appointment).

The issue whether there was an entitlement based on a mutually explicit understanding cannot be resolved on summary judgment at this time. Though such an understanding arguably existed, in reality, Lucero had failed to meet the minimum requirements of her job—the ability to type 45 words per minute (wpm). Since the typing certificate from Sacramento City College submitted by Lucero indicated that she had typed 45/wpm, and neither party knew that the scoring was in error, it is possible that there was a "mutually explicit" understanding that Lucero's employment would continue. *Roth*, 856 F.2d at 1409. It is doubtful, however, that this mutually explicit understanding continued upon discovery of the error in scoring. As the Ninth Circuit has recognized, whether such an understanding exists will frequently turn on factual questions which cannot be resolved on motion for summary judgment. *Id.* at 1409. Whether there was an entitlement based on a "mutually explicit" understanding subsequent to the discovery of the error in the scoring of appellant's typing test is a disputed factual issue, and thus, should not be resolved on summary judgment.

■ We need not resolve the issue whether there was an entitlement, however, in order to affirm the district court. Government officials are immune from liability for civil damages under § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. There is no clearly established law on the issue of whether appellant had a constitutionally protectable property interest in her job.[2] It is of note that Mitchell consulted with Larry Jones of the County counsel's office prior to terminating Lucero. While reliance on counsel's advice will not satisfy a defendant's burden of acting reasonably, it is evidence of defendant's good faith. *Tubbesing v. Arnold*, 742 F.2d 401, 407 (8th Cir.1984). In this situation it was un-

clear whether statutory or constitutional rights were implicated in appellant's discharge. The district court admitted that it could not "determine whether her [Lucero's] appointment was valid, invalid, void or voidable." (dist. ct. op. at 14). The unsettled nature of the law on the issue of entitlement to a job acquired pursuant to a mistake of fact necessarily means that the government officials could not have violated a *"clearly established* statutory or constitutional right of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). Under *Harlow*'s "reasonable person" test, no clearly established statutory or constitutional right was violated. Thus, the district court's grant of summary judgment on the issue of qualified immunity is affirmed.

### B. *Rehabilitation Act Claim*

■ In order to make out a prima facie case under the Rehabilitation Act, Lucero must show (1) that she was an "otherwise qualified" handicapped individual for purposes of the Act, and (2) that she was terminated because of her handicap. *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987). If the plaintiff makes out a prima facie case of wrongful termination under the Act, the burden shifts to the defendant who must demonstrate a legitimate nondiscriminatory reason for the termination. *Reynolds*, 815 F.2d at 574. Summary judgment is still proper if the defendants can rebut any prima facie case with evidence of a nondiscriminatory reason for the termination. *Id.* at 575 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265).

■ Initially, it should be noted that Lucero was technically not "otherwise qualified" for her job. A clerk in her position must be able to type 45/wpm. Lucero could only type 44/wpm. If 44/wpm was sufficient, why is that not the minimum requirement? If 44/wpm is close enough, why not 43/wpm; or 40/wpm? While this

**2.** *Roth* 856 F.2d 1401, suggests that Lucero may have a property interest in continued employment, while the California Government Code

suggests that there is no entitlement. *See* note 1, *supra.*

seems a very technical distinction, the standard was set at 45/wpm for a reason, and it is not the court's job to establish minimum qualification standards for county employees in Sacramento.

The district court does not address the issue of whether Lucero was fired because of her handicap. The district court was willing to assume, however, that Lucero was an "otherwise qualified" handicapped individual, but granted summary judgment based on the county's reasonable efforts to accommodate Lucero. However, as the district court noted, we do not reach the issue of reasonable accommodation unless the court first finds that an individual cannot perform the essential functions of her job. *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307. An individual is not "otherwise qualified" if she cannot perform the essential functions of her job. *Id.;* 45 CFR § 84.3(k) (1985). Thus, there is an implied finding that Lucero was not "otherwise qualified." In this situation, it is the county's duty to make reasonable accommodations to enable the handicapped person to perform the essential functions of her job. *Arline,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17.

As stated previously, sometime in the middle of June it was learned that Lucero did not meet the minimum requirements for typing speed. The county allowed Lucero to retake the typing test sometime later in June, 1987, and due to her lack of transportation, drove her to the test taking site. Due to an extreme stress reaction, Lucero did not pass the test. Papp and Mitchell made numerous attempts to provide appellant with an opportunity to either pass the test or obtain alternative employment with the county. Lucero did not respond to any of the attempts. Appellees' attempts to accommodate Lucero were no less reasonable due to the fact that Lucero was emotionally and physically debilitated at this time.

Thus, if the district court opinion is interpreted as holding that appellant was *not* "otherwise qualified", the result reached by that court, based on the reasonable ef-

forts of the county to accommodate appellant, is adequately supported by the record.

Alternatively, if we read the district court opinion to hold, as it purports to do, that Lucero was "otherwise qualified", then the issue that must be addressed is whether the county had a nondiscriminatory reason for firing Lucero. *Reynolds,* 815 F.2d at 574. In effect, however, the foregoing analysis addresses this issue as well. Lucero was not fired because of her handicap. She was fired because she could not meet the minimum requirements of her job, and reasonable efforts to accommodate her failed. Based on the foregoing, the judgment of the district court is affirmed.

### CONCLUSION

The district court granted summary judgment on both of appellant's claims. Based on qualified immunity, the judgment with respect to the § 1983 claim is AFFIRMED. Based on appellees' reasonable efforts to accommodate appellant, and the nondiscriminatory basis for appellant's termination, the judgment with respect to the Rehabilitation Act claim is AFFIRMED.