Johanna KIM and Ernest
K. Ho, Plaintiffs,

v.

James `E. POTTER, in his capacity as
the Postmaster General, United States
Postal Service, Defendant.

Civil No. 05–00332 JMS/LEK.

United States District Court,
D. Hawai'i.

April 26, 2006.

Clayton C. Ikei, Jerry P.S. Chang, Honolulu, HI, for Plaintiff.

Thomas A. Helper, Office of the United States Attorney, Honolulu, HI, for Defendant.

*ORDER DENYING PLAINTIFF HO'S MOTION FOR PARTIAL SUM-MARY JUDGMENT AND GRANT-ING DEFENDANT POTTER'S COUNTER–MOTION FOR SUM-MARY JUDGMENT*

SEABRIGHT, District Judge.

## I. INTRODUCTION

Plaintiff Ernest K. Ho has moved the court for partial summary judgment as to his claim of disability discrimination. Defendant James E. Potter, in his capacity as Postmaster General of the United States Postal Service ("USPS"), filed a Counter–Motion to Dismiss and for Summary Judgment as to Ho's Complaint. Based on the following, the court DENIES Plaintiff Ho's motion and GRANTS the Defendant's motion.

## II. BACKGROUND

In 1965, Ho began working for the USPS in Honolulu. For the next twenty years, Ho performed the various duties required of a USPS window clerk. While riding his moped off-duty in 1985, Ho was involved in a automobile accident that resulted in physical injuries to his left shoulder and left knee. The accident resulted in permanent physical impairments including restrictions on overhead movement, weight limitations on lifting and carrying items, a limp when walking, difficulty bending, cognitive impairment, and infrequent seizures.[1] Ho takes anti-seizure medication daily, sometimes mixes up numbers, days, and times, and occasionally gets dizzy and needs to sit down. Furthermore, Ho is restricted from working around machinery and driving an automobile.

During the time period relevant to the instant dispute, the USPS had three categories of employees at its Honolulu Processing and Distribution Center: Bid Employees, Limited Duty Employees, and Light Duty Employees. Bid Employees were regular duty employees who had no physical restrictions on their ability to perform manual distribution work. Limited Duty Employees were employees who were no longer able to perform their original bid positions due to work-related injuries or medical conditions. Light Duty Employees were employees who were unable to perform their original bid positions due to injuries or medical conditions that were not work-related.

In 1986, after his accident, Ho applied to be reassigned to light duty work. The USPS granted Ho's application and reassigned him to the Honolulu Distribution Center as a Light Duty Mail Processing Clerk. During the time period relevant to the instant dispute, Ho was assigned to Pay Location 359 ("PL359"); all employees within PL359 were on permanent light duty status due to various physical and mental impairments.

According to the USPS, in the fall of 2002, automation of some aspects of the processing and distribution functions decreased the amount of work available to USPS Light Duty Employees.[2] For sev-

---

1. Ho had approximately one grand mal seizure, at home, around 1986. Ho has had a number of petite mal seizures since 1986; approximately ten of these petite mal seizures have been at work. Plaintiff's Concise Statement of Facts in Support of Motion for Summary Judgment ("Plaintiff's Concise # 1"), Ex. A at 38–41.

2. Limited Duty Employees—those employees who suffered work-related injuries or medical conditions—are paid for forty hours of work a week regardless of whether there is work available for them. Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* Because Limited Duty Employees are to be paid regardless of whether they work, federal regulations require that the USPS give preference to Limited Duty employees (over Light Duty Employees) in the assignment of work. *See* 20 C.F.R. § 10.500 *et seq.*

eral days in September of 2002, Ho arrived at work and was told by Milton Kokubun (the Distribution Operations Manager) to return home because there was insufficient work available. After several days of calling PL359 employees and telling them not to come to work, Kokubun told the PL359 employees not to come to work unless he (Kokubun) called them to tell them that work was available. Ho suggests that the USPS's actions caused several Light Duty Employees to leave the USPS: in September 2002, PL359 had approximately five Light Duty Employees, but as of February 2005, only one of those employees remained.[3]

Ho disagrees with the USPS that the reason it decreased Ho's hours was because of a lack of work. Although USPS claims that it simply did not have any work for the Light Duty Employees because of the increase in automation, Ho argues that the USPS did have work, inasmuch as the USPS continued to give Bid Employees overtime hours after September 2002. Ho contends that the USPS reduced his work hours because of his disability and that such action constitutes disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*

Ho requested an appointment with a Dispute Resolution Specialist on October 8, 2002. On October 11, 2002, Ho completed a document entitled "Information for Pre–Complaint Counseling" and provided information about his claim to an Equal Employment Opportunity (EEO) counselor.

In May 2003, the USPS Reasonable Accommodation Committee (RAC) reviewed Ho's situation to determine whether there were other jobs with the USPS that Ho could perform. When asked about his medical restrictions, Ho told the RAC the following:

1) May work full time but not around moving machinery. 2) May not drive. 3) Able to work below shoulder level and can currently lift up to 60 [pounds]. 4) Needs intermittent time off every 3 months for monitoring his condition.

Defendant's Concise Statement of Facts ("Defendant's Concise"), Ex. 2. When asked, "What major life activities are affected by the medical condition," Ho responded, "Unable to drive or operate machinery." *Id.*

Ho claims that he retired involuntarily on or about May 1, 2004, because he was not returned to a full work schedule after September 2002. Ho filed a Complaint on May 18, 2005, and on August 26, 2005, filed a Motion for Partial Summary Judgment. The USPS filed its Counter–Motion to Dismiss or for Summary Judgment on January 19, 2006, and the court heard arguments on the motions on February 27, 2006. On March 14, 2006, the court requested additional briefing from the parties, and the parties submitted their supplemental briefs on March 31, 2006.

## III. *STANDARD OF REVIEW*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91

---

**3.** On December 13, 2002, the USPS granted Ho's request to take leave for his left shoulder and knee conditions pursuant to the Family Medical Leave Act (FMLA).

L.Ed.2d 265 (1986). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir.1999) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## IV. *ANALYSIS*

A. *The USPS is entitled to summary judgment as to all claims of discrimination that occurred before August 24, 2002*

■ Federal regulations require federal employees to contact an EEO counselor within forty-five days of any alleged discrimination. 29 C.F.R. § 1614.105(a)(1). Failure to comply with this regulation will result in dismissal of an employee's discrimination claim. *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir.2002).

In the instant case, Ho contacted an EEO counselor on October 8, 2002. Therefore, Ho has satisfied 29 C.F.R. § 1614.105(a)(1) with respect to all alleged acts of discrimination that occurred on or after August 24, 2002. Ho has not presented any evidence to suggest that waiver, estoppel, or equitable tolling should apply in this case; consequently, to the extent that Ho's Complaint raises claims of discrimination that occurred on or before August 23, 2002, those claims are barred by 29 C.F.R. § 1614.105(a)(1).

B. *The USPS is entitled to summary judgment as to the remainder of Ho's claims*

The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, prohibits the USPS from discriminating against employees with disabilities. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted ... by the United States Postal Service."). The Rehabilitation Act incorporates the substantive standards set forth by the Americans with Disabilities Act. 29 U.S.C.A. § 791(g).[4]

■ "In order to make out a claim under the Rehabilitation Act, [the plaintiff] must establish, *inter alia*, that he is (1) an individual with a disability, (2) otherwise qualified and (3) subjected to discrimination solely by reason of his disability."[5] *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1174 (9th Cir.1998) (per cu-

---

**4.** 29 U.S.C.A. § 791(g) provides:

The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

**5.** The court recognizes, however, that there is a distinction between Rehabilitation Act

claims and ADA claims: the ADA requires a plaintiff to prove that his disability was a motivating factor in the challenged action, whereas the Rehabilitation Act requires a plaintiff to prove that he was discriminated against solely on the basis of his disability. *See, e.g., Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir.2005) ("[W]e conclude that 'solely' is not the appropriate causal standard under any of the ADA's liability provisions.... We conclude that a motivating factor standard is the appropriate standard for causation in the ADA context[.]").

riam); *see also Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1133 (9th Cir.2001) ("To prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish that he is a qualified individual with a disability and that the employer terminated him because of his disability."); *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990) ("In order to make out a prima facie case under the Rehabilitation Act, [the plaintiff] must show (1) that she was an 'otherwise qualified' [disabled] individual for purposes of the Act, and (2) that she was terminated because of her [disability]."). "If the plaintiff makes out a prima facie case ..., the burden shifts to the defendant who must demonstrate a legitimate nondiscriminatory reason for the [adverse employment action]." *Lucero,* 915 F.2d at 1371. *See also Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (applying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to a disability discrimination claim brought pursuant to the ADA).

The court concludes that Ho has set forth a prima facie case of disability discrimination, based on the USPS's reduction of Ho's hours as a Light Duty Mail Processing Clerk. Although the USPS first argues that summary judgment is appropriate because Ho is not "disabled" within the meaning of the Rehabilitation Act, the court concludes that there is a genuine issue of material fact as to whether Ho has a "record of" a disability (such that summary judgment is not appropriate on this basis). Nevertheless, the USPS has set forth a legitimate, nondiscriminatory reason for the adverse employment action (the reduction in Ho's hours), and Ho has failed to demonstrate that this reason was pretext for unlawful discrimination. Each of these issues is discussed in turn.

**1. Ho has set forth a prima facie case of disability discrimination**

Ho argues that he is qualified for his position as a Light Duty Mail Processing Clerk, and the USPS does not contest this assertion. The USPS does argue, however, that Ho is not "disabled" and that the USPS did not discriminate against Ho on the basis of a disability. The court concludes that Ho has raised a genuine issue of material fact as to whether he is "disabled" for purposes of setting forth a prima facie case of discrimination. The court also concludes that Ho has established a prima facie case of disability discrimination.

a. *There is a genuine issue of material fact as to whether Ho has a "disability" within the meaning of the Rehabilitation Act*

Federal regulations define "disability" as follows:

(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) A record of such an impairment; or

(3) being regarded as having such an impairment.

29 C.F.R. § 1630.2(g). Ho neither has "[a] physical or mental impairment that substantially limits one or more of the major life activities," nor is he "regarded as having such an impairment." *Id.* There are genuine issues of material fact, however, as to whether Ho has a "record of such an impairment" and whether the USPS discriminated against Ho based on the purported record of impairment.

i. **Ho does not have a physical or mental impairment that substantially limits a major life activity**

In the instant case, viewing the facts in the light most favorable to the

non-moving party,[6] Ho has a number of permanent physical impairments: he has a limp, he has difficulty bending, and he has restricted movement in his left shoulder. Ho also alleges that he suffers from a cognitive impairment, causing him to mix up numbers, days, and times, and also causing him to have an occasional mild seizure. These impairments undoubtedly *affect* Ho's major life activities of walking, standing, working, lifting, and reaching. *See* 29 C.F.R. § 1630.2(h) (*"Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, ... and working."); 29 C.F.R. § 1630.2(i) App. ("[O]ther major life activities include, but are not limited to, sitting, standing, lifting, reaching.").

■ Nevertheless, there is no evidence that Ho is *substantially limited* in any of these major life activities. The term "substantially limits" is defined as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1630.2(j). Federal regulations also provide that "[t]he following factors should be considered in determining whether an individual is substantially limited in a major life activity":

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. 1630.2(j)(2). Although Ho's left knee is impaired (he walks with a limp), he is not substantially limited in his ability to walk or stand. *See Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (per curiam) (holding that "moderate difficulty experienced while walking does not rise to the level of a disability" and that the plaintiff was not "disabled" simply because she walked with a limp and moved slower than other people). Ho can lift up to 60 pounds, and is therefore not substantially limited in his ability to lift. *See Thompson v. Holy Family Hosp.,* 121 F.3d 537, 541 (9th Cir.1997) (per curiam) ("[A] 25–pound restriction does not amount to a substantial limitation on the ability to lift."). As to Ho's allegations of cognitive impairments and seizures, there is simply no evidence to indicate that these impairments substantially limit Ho in any way. The only apparent restrictions Ho faces as a result of the seizures is that Ho is prohibited from driving or operating heavy machinery. Nevertheless, neither driving nor operating heavy machinery, in and of themselves, are major life activities. *Capobianco v. City of New York,* 422 F.3d 47, 58 n. 7 (2d Cir.2005) (driving);[7] *Howard v. Navistar Intern. Transp. Corp.,* 904 F.Supp. 922, 929 (E.D.Wis.1995) (stating

---

**6.** Both parties have moved for summary judgment. The court views the facts in the light most favorable to Ho, but ultimately concludes that the USPS is entitled to summary judgment.

**7.** *But see Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 47 (2d

Cir.2002) ("The function of 'caring for one's self,' we have held, 'encompasses normal activities of daily living; including feeding oneself, *driving,* grooming, and cleaning home.' " (Quoting *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 871 (2d Cir.1998).) (Emphasis added.)).

that the plaintiff was not "disabled" simply because he was unable to operate a particular piece of machinery and that " '[t]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to the substantial limitation of the activity of working[ ]' " (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995))).

■ There may be circumstances in which a series of non-substantial impairments, put together, have the net effect of substantially impairing one or more major life activities. 29 C.F.R. § 1630.2(j) App. ("Multiple impairments that combine to substantially limit one or more of an individual's major life activities also constitute a disability."). The instant case, however, does not present those circumstances. In sum, the court recognizes that Ho has several permanent physical impairments that restrict his ability to walk, stand, lift, reach, and drive. There is no genuine issue of material fact, however, as to whether these impairments (either alone or in concert) substantially limit any major life activity.[8]

### ii. There is a genuine issue of material fact as to whether Ho has a record of being disabled

■ Pursuant to 29 C.F.R. § 1630.2(g), an individual may be considered disabled if he has a "record of such an impairment[.]" Federal regulations provide that a record of an impairment means that the individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Ho argues that he has a record of an impairment based on his 1985 accident.

Immediately following his accident on September 16, 1985, Ho was admitted to Kuakini Hospital, where he remained a patient until his transfer to the Rehabilitation Hospital of the Pacific on October 7,

---

8. Because Ho is not currently substantially limited in a major life activity, he cannot proceed on his theory that the USPS denied him a reasonable accommodation. For example, in *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1233 (9th Cir.2003), the Ninth Circuit held that "there is no duty to accommodate an employee in an 'as regarded' case." The court reasoned that "[t]o require accommodation for those not truly disabled would compel employers to waste resources unnecessarily, when the employers' limited resources would be better spent assisting those persons who are actually disabled and in genuine need of accommodation to perform to their potential." *Id.* at 1232. *See also Gilday v. Mecosta County*, 124 F.3d 760, 764 n. 4 (6th Cir.1997) ("That such a person could request accommodation means that he is actually physically disabled under the Act, and not merely considered to be disabled or have a record of disability."); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 n. 6 (7th Cir.1998) ("[D]oes the employer incur a duty to accommodate an employee based on her history of a substantially limiting impairment, even if her current limitations are not substantial? If so, the 'record of impairment' provision grants the ADA a significantly broader sweep than it would otherwise have. We need not address such questions at this juncture[.]"). *But see Kelly v. Metallics West, Inc.*, 410 F.3d 670, 675 (10th Cir.2005) (agreeing with the First and Third Circuits that a claim for reasonable accommodation is available to an employee who is merely regarded or perceived as disabled). Thus, even if Ho can prove that he has a "record of" a disability or that he is "regarded as" being disabled, he cannot succeed on a reasonable accommodation claim.

Ho's First Amended Complaint seems to center on the USPS's alleged failure to provide him with a reasonable accommodation. Whether his First Amended Complaint also sets forth a claim for discrimination is not entirely clear, but the court assumes for purposes of this order that the Complaint does, in fact, allege a claim for discrimination (based on the reduction of his hours) separate from his claim for failure to accommodate. As discussed *infra*, however, Ho cannot succeed on a discrimination claim.

1985. Plaintiff's Concise Statement of Facts in Opposition to USPS's Motion for Summary Judgment ("Plaintiff's Concise # 2"), Ex. E at 4. Ho was eventually discharged from the Rehabilitation Hospital on November 8, 1985. Plaintiff's Concise # 2, Declaration of Ernest K. Ho at ¶ 6. Viewing the facts in the light most favorable to Ho, the court assumes that Ho could not perform one or more major life activities while hospitalized.

Ho's hospitalization, by itself, would not be enough to establish a record of a disability because, at most, Ho was substantially limited in one or more major life activities for less than two months. *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 645 (2d Cir.1998) (holding that a thirty day hospitalization, followed by six months out of work, was not sufficient to establish a record of substantially limiting impairment); *Sorensen v. Univ. of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999) (concluding that the plaintiff's five-day hospital stay weighed in favor of finding a substantially limiting impairment, but the impairment's short duration and lack of long term impact weighed against that conclusion). Ho's impairments did not completely disappear upon his discharge from the hospital, however. Instead, Ho alleges that he continues to suffer impairments to the present day (although these impairments do not limit a major life activity). One of the factors used to determine whether an impairment substantially limits a major life activity is the "permanent or long term impact ... resulting from the impairment." 29 C.F.R. 1630.2(j). Although no reasonable finder of fact could

conclude that Ho is *currently* substantially limited in a major life activity, a reasonable finder of fact could conclude that Ho has a *record of* a disability based on his 1985 hospital stay and resulting permanent impairments. *See Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1089 (9th Cir.2001) ("The many physicians' notes and various letters in the record, combined with [the plaintiff's] prolonged leave, create at least a genuine issue of fact regarding a record of [the plaintiff's] impairment.").

The USPS argues that "[i]t would make little sense ... for the court to add together a short-term impairment that does not in itself constitute a disability because it is of insufficient duration, to a long-term impairment that does not in itself constitute a disability because it does not substantially limit a major life activity, and find that the employee is disabled." Defendant's Supplemental Memorandum at 3 n. 1. The court disagrees. As discussed *supra,* there is no question that Ho is not now disabled. Nevertheless, a reasonable finder of fact could find that Ho *was* disabled in 1985 (and therefore has a record of a disability). The finder of fact may consider three factors in determining whether, in 1985, Ho was "disabled": (1) the severity of Ho's impairment; (2) the duration of Ho's impairment; and (3) the permanent impact resulting from Ho's impairment.[9] 29 C.F.R. 1630.2(j)(2). A reasonable finder of fact could determine that Ho has a record of a disability. *See, e.g., Lloyd v. E. Cleveland City School Dist.,* 232 F.Supp.2d 806, 812 (N.D.Ohio 2002) (ruling

---

**9.** The terms "duration" and "impact" are explained more fully in the Appendix to 29 C.F.R. § 1630.2(j):

The term "duration," as used in this context, refers to the length of time an impairment persists, while the term "impact" refers to the residual effects of an impairment. Thus, for example, a broken leg

that takes eight weeks to heal is an impairment of fairly brief duration. However, if the broken leg heals improperly, the "impact" of the impairment would be the resulting permanent limp. Likewise, the effect on cognitive functions resulting from traumatic head injury would be the "impact" of that impairment.

that the plaintiff, who spent nearly five months in the hospital and required two follow-up surgeries in the four years after leaving the hospital, had presented a genuine issue of material fact as to whether he had a record of a disability).

### iii. There is no evidence that Ho was "regarded as" being disabled

■ Ho also argues that he was "regarded as" being disabled because he was a Light Duty Employee. 29 C.F.R. § 1630.2 provides in relevant part:

(*l*) *Is regarded as having such an impairment* means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

There is no evidence that anyone regarded Ho as being substantially limited in a major life activity. The fact that Ho was reassigned to light duty work upon his return to the USPS in 1986 does not constitute an admission that Ho is "disabled"

for purposes of the Rehabilitation Act. *See Colwell,* 158 F.3d at 646 (stating that "an employer that accedes to minor and potentially debatable accommodations ... does not thereby stipulate to the employee's record of a chronic and endless disability."). In accepting Ho's request for a light duty assignment, the USPS apparently agreed with Ho that Ho was unable to perform the duties of his original bid position as a result of his off-duty automobile accident. There is simply no evidence to suggest that anyone at the USPS believed that Ho could not stand, work, reach, lift, carry, or otherwise perform major life activities.[10] Consequently, summary judgment is proper on this claim as well.

### b. Ho has set forth sufficient evidence of disability discrimination (reduction in hours) to establish a prima facie case of discrimination

■ The USPS does not dispute that it reduced Ho's hours. Ho claims that his hours were reduced while other, non-disabled, employees continued to receive overtime hours, and that this disparate treatment is circumstantial evidence of discrimination. For purposes of establishing a prima facie case, the court agrees. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."). Given that Ho has set forth a prima facie case of

---

10. Ho does point out, however, that Larry Kumata (Ho's former supervisor) stated, "I noticed [Ho] had trouble walking, and he kind of reminded me of my father, who had Parkinson's disease. It seems that he's hesitant as he's walking along." Plaintiff's Concise # 2, Ex. B at 14. Additionally, Milton Kokubun (Ho's supervisor) stated that "I know he had lifting restrictions, unable to work around machinery, no prolonged standing type restrictions." Plaintiff's Concise # 2, Ex. C at 79–80. There is no indication, though, that anyone at USPS regarded Ho as

being substantially limited in a major life activity. *See* 29 C.F.R. § 1630.2(*l*) App. (explaining that the "regarded as" category is designed to combat the "myths, fears, and stereotypes" associated with disabilities). On the contrary, the evidence suggests that the USPS believed that Ho was somewhat impaired in his ability to walk, his ability to lift, his ability to stand, and his ability to operate machinery. These are all accurate perceptions of Ho's impairments, and there is simply no evidence to suggest that the USPS believed Ho to be more limited than he actually was.

disability discrimination, the burden shifts to the USPS to provide a legitimate, non-discriminatory reason for its actions. As discussed below, the fact that other employees received overtime hours—while sufficient to establish a prima facie case of discrimination—is insufficient to demonstrate that the USPS's proffered nondiscriminatory reason for reducing Ho's hours was pretextual. *See Bowden v. Potter*, 308 F.Supp.2d 1108, 1117 n. 5 (N.D.Cal.2004) ("Given the gate-keeping function of the first prong [of *McDonnell Douglas*, which addresses whether the plaintiff has established a prima facie case], there is reason to apply a more relaxed analysis to the prima facie stage than to the pretext [stage].").

### 2. The USPS had a legitimate, non-discriminatory reason for reducing Ho's hours; Ho has failed to demonstrate that this reason was pretextual

 Both Ho and the USPS contend that summary judgment is appropriate as to whether the USPS discriminated against Ho on the basis of his record of a disability. The court agrees with the USPS. The USPS has set forth a legitimate, nondiscriminatory reason for its actions, and Ho has not set forth sufficient evidence to allow a reasonable trier of fact to conclude that the USPS's proffered explanation was pretextual.

Once a plaintiff has established a prima facie case of disability discrimination:

> [T]he burden shifts to the defendant to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was rejected for a legiti-

mate, nondiscriminatory reason. If the defendant does so, the burden then shifts back to the plaintiffs to demonstrate the proffered reason was not the true reason for the decision or that it encompassed unjustified consideration of the [disability] itself, *i.e.*, that the articulated reason is a pretext. The ultimate burden, of course, remains with the plaintiffs.

*Smith v. Barton*, 914 F.2d 1330, 1340 (9th Cir.1990) (citation omitted). An employer is not necessarily precluded from considering an employee's disability in making employment decisions, however; "[b]ecause the statute does not bar an employer from considering an employee's [disability], a [Rehabilitation Act] action often is not susceptible to the burden-shifting order of proof regularly employed in discrimination suits." *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511, 514–15 (2d Cir. 1991). Thus, where an employer relies on an employee's disability in making an employment decision, "the employer bears the burden of showing that the disability is relevant to the job's requirements." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1176 (9th Cir.1998) (per curiam); *see also Snead v. Met. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 n. 10 (9th Cir.2001) ("[I]f the employer acknowledges reliance on the disability in the employment decision, the employer bears the burden of showing that the disability is relevant to the job's requirements.").[11]

The USPS has proffered a non-discriminatory reason—increased automation—for the decrease in Ho's hours. The USPS acknowledges that it relied (at least in

---

**11.** Whether the *McDonnell Douglas* framework even applies in the instant case is not clear, in light of *Mustafa* and *Snead*. In the instant case, the USPS disclaims any reliance on Ho's alleged *disability* (as that term is used in the Rehabilitation Act) in making its employment decisions, although it may have re-

lied on Ho's *impairments* in making those decisions. Regardless of the framework the court uses to approach this case, however, the court concludes that no reasonable trier of fact would find that the USPS discriminated against Ho solely on the basis of a disability.

part) on Ho's physical limitations in decreasing his hours. *See* Second Declaration of Milton Kokubun at 1 ("Ernest Ho was not eligible for positions in [Pay Location] 373 because his medical restrictions prevented him from casing flats.... Ho's medical restrictions prevented him from doing [work in Pay Location 389] too."). Nevertheless, the USPS has met its burden under *Mustafa* by offering evidence that Ho's physical impairments prevent him from performing available work. *See id.* In other words, the USPS decreased Ho's hours because Ho was no longer able to do the work that the USPS had available.

Assuming that the *McDonnell Douglas* framework applies in this case (see note 10, *supra*), the burden shifts to Ho to demonstrate that the USPS's proffered explanation is pretextual. Ho, however, goes no further than pointing to the fact that the USPS continued to give Bid Employees overtime work while claiming to have no work for Light Duty employees as evidence of pretext.

Before analyzing the evidence in the instant case, the court pauses to recognize that the quantum of proof required to demonstrate pretext sufficient to overcome a motion for summary judgment is not entirely clear. Ho relies on circumstantial evidence of discrimination—specifically, the fact that the USPS continued to give Bid Employees and Limited Duty Employees overtime hours while claiming it lacked work for Light Duty Employees—to prove pretext. Established Ninth Circuit precedent provides that Ho must produce "specific and substantial" evidence to overcome the USPS's proffered nondiscriminatory reason for reducing his hours. *See, e.g., Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir.2005) ("[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's mo-

tion for summary judgment." (Quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998).)); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir.1995) (requiring " 'specific, substantial evidence of pretext' " to avoid summary judgment (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983))). More recently, however, in *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030 (9th Cir.2006), the court concluded that "in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence." The *Cornwell* court relied *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), in which the Supreme Court stated that "[t]he reason for treating circumstantial and direct evidence alike is both clear and deep rooted"; *Costa* also strongly suggested that, in discrimination cases, a plaintiff who offers circumstantial evidence of discrimination need not produce better evidence (or more evidence) than a plaintiff who offers direct evidence of discrimination. *See Cornwell,* 439 F.3d at 1030. The three-judge *Cornwell* panel declined to announce a new Ninth Circuit rule, however, given that *Costa* was not "clearly irreconcilable" with the "specific and substantial" rule and because the power to overturn a prior circuit holding is typically reserved for en banc panels. *Id.* at 1030–31. Nevertheless, several district courts have begun applying a more traditional summary judgment standard, rather than the "specific and substantial" standard, when determining whether a plaintiff's circumstantial evidence demonstrates pretext sufficient to survive summary judgment. *See Hester v. Barnhart,* No. C 04–03511, 2006 WL 997184, *2 n. 3 (N.D.Cal. April 17, 2006) ("In light of *Cornwell,* this Court will not apply the more stringent *Godwin* test but

instead shall apply the traditional summary judgment standards utilized in *Cornwell* and *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1123 (9th Cir.2004)." [12]; *Miceli v. Bechtel BWXT Idaho, L.L.C.,* No. CV 04 398, 2006 WL 980729, *3 (D.Idaho April 12, 2006) (following *Cornwell* and stating that the plaintiff "must offer some circumstantial evidence from which a reasonable jury could conclude [the employer] fired [the plaintiff] because of his age.").

Added to this conflict is the notation in *Coghlan* that the Ninth Circuit had "recently suggested that 'specific and substantial' evidence may be required even when direct evidence is at issue." *Coghlan,* 413 F.3d at 1095 n. 7. In other words, even if the Ninth Circuit determines that the quantum of proof should be identical regardless of whether the plaintiff presents direct or circumstantial evidence, the Ninth Circuit could require all plaintiffs to provide "specific and substantial" evidence.

In sum, because Ho relies on circumstantial evidence, Ho may or may not have a higher burden than a plaintiff relying on direct evidence; furthermore, even if the standards for direct and circumstantial evidence are the same, that standard may require Ho to produce "specific and substantial" evidence, or it may only require Ho to produce evidence from which a reasonable jury could find pretext.

The court need not resolve this conflict at the present time. Even if Ho is only required to produce evidence by which a reasonable jury could find pretext, Ho has failed to meet his burden.

There is no doubt that Ho has some physical impairments. There is no doubt that the USPS believed Ho to be incapable of performing standard USPS work because of these physical impairments—in fact, Ho specifically asked for Light Duty work because of these physical impairments, and Ho admits that he was unable to perform Bid Employee work because of his accident. Plaintiff's First Amended Complaint at 9 ("After the accident, Ho could no longer perform his bid position[.]"). *See also* Second Declaration of Milton Kokubun ("Ernest Ho was not eligible for positions in PL 373 because his medical restrictions prevented him from casing flats. PL 389 primarily employed persons who stood at large sorting machinery for long periods. Ernest Ho's medical restrictions prevented him from doing this work too."). There is also no doubt that the USPS gave overtime hours to Bid Employees while simultaneously claiming that no work existed for the Light Duty Employees. Nevertheless, the fact that other employees received overtime hours does not help Ho, because there is no evidence to suggest that Ho was capable of performing Bid Employees' work. Ho does nothing to counter the USPS's assertion that Ho was incapable of performing PL 373 or PL 389 work. Ho has not alleged, nor has he provided any evidence, that he *could* perform the tasks required by PL 373 or PL 389 employees. Because Ho cannot perform the work of PL 373 or 389 employees, he is not similarly situated to them; therefore, the fact that Bid Employees were given overtime work is not probative of pretext. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."); *Vasquez v. County of Los An-*

---

**12.** In *McGinest,* the Ninth Circuit held that regardless of whether the plaintiff relied on direct or circumstantial evidence of discriminatory intent, the plaintiff "must produce some evidence suggesting that [the employ- er's] failure to promote him was due in part or whole to discriminatory intent, and so must counter [the employer's] explanation that a hiring freeze accounted for its failure to promote him." 360 F.3d at 1123.

*geles,* 349 F.3d 634, 641 (9th Cir.2003) ("A showing that the [employer] treated similarly situated employees outside [the employee's] protected class more favorably would be probative of pretext.... [I]ndividuals are similarly situated when they have similar jobs and display similar conduct.").

Simply put, the fact that PL 373 and 389 employees received overtime hours is not relevant to the issue of whether the USPS discriminated against Ho, absent some evidence to suggest that the USPS gave work to the Bid Employees that could otherwise have gone to Ho. Indeed, Ho stated in his deposition that the hours of all the Light Duty Employees were reduced, suggesting that the USPS offered identical treatment to similarly situated employees. Plaintiff's Concise # 1, Ex. A at 66. Furthermore, the record reflects that the USPS continued to give overtime hours to Limited Duty employees, suggesting a lack of discriminatory animus towards individuals who may be disabled, may have a record of being disabled, or may be regarded as disabled.

The USPS need not offer Ho a reasonable accommodation because he is not presently substantially limited in a major life activity. And while Ho has set forth a prima facie case of disability discrimination based on his alleged record of a disability, he has not presented sufficient evidence to allow a reasonable trier of fact to conclude that the USPS's explanation for the reduction in Ho's hours—increased automation—was pretextual. Consequently, the USPS is entitled to summary judgment.

## V. *CONCLUSION*

For the foregoing reasons, the court GRANTS the Defendant's Motion for Summary Judgment and DENIES Plaintiff Ho's Motion for Summary Judgment.

IT IS SO ORDERED.