Filed 11/2/22  Brinkley v. Cal. State U., Northridge CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| NATALIE E. BRINKLEY, | B296983 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. SC123205) |
| CALIFORNIA STATE UNIVERSITY, NORTHRIDGE et al, | |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Michael H. Lapidus for Plaintiff and Appellant.

Rob Bonta, Attorney General, Danielle F. O'Bannon, Assistant Attorney General, Elizabeth S. Angres and Haiyang Allen Li, Deputy Attorneys General, for Defendants and Respondents.

—————————————

The incidents that triggered this litigation arose nearly nine years ago during plaintiff Natalie Brinkley's first semester as a student at defendant California State University, Northridge (CSUN). A few hours before the midnight deadline, she emailed her professor an equivocal request for an extension of time to submit the first three-page essay required in a social science class. Her professor ultimately refused the request, citing her general policy to deny extensions requested close to the deadline. Brinkley, who was receiving special assistance and accommodations from CSUN due to her learning disabilities, thereafter accused the professor of being "unethical"; advised the professor that she had "sent a request to civil rights for help"; subsequently expressed in an email to her counselor in the Disability Resources and Education Services Center (DRES) that the professor was being a "bitch," and ultimately made a police report for what she described as harassment by CSUN as it responded to these circumstances.

The essay-deadline incident and CSUN's response to her complaints allegedly triggered a cascading series of adverse health events that culminated in Brinkley's withdrawal from the university for medical reasons.

In September 2014, Brinkley filed a complaint in propria persona against CSUN and five individual employees[1]

---

[1] The individuals named in her complaint are Mark Smith, a counselor with DRES; Jennifer Thompson, the professor; Sam Lingrosso, director of student conduct and ethical development; Jody Johnson, director of DRES; and Jody Myers, coordinator of the Jewish studies interdisciplinary program. The class for which Brinkley has sought the extension was Jewish Ethics and Society, which was taught by Thompson and within Myers' program.

(collectively, Defendants), alleging claims for relief for, inter alia, violations of the Americans with Disabilities Act (ADA; 42 USC §§ 12131-12132), the Rehabilitation Act of 1973 (Rehabilitation Act; 29 USC §§ 701-796), the Unruh Civil Rights Act (Unruh Act; Code Civ. Proc., §§ 1-52), as well as for negligence, negligent misrepresentations, and intentional infliction of emotional distress.  Brinkley later retained counsel, and the litigation proceeded until the court granted Defendants' motion for summary judgment in October 2018.  That motion had been filed on April 15, 2018, and was set for hearing on July 25, 2018.  However, on July 11, the court granted Brinkley's ex parte application to continue the hearing and extend Brinkley's time to respond to the motion.  The new deadline for filing the opposition was missed and counsel waited more than three weeks (until the afternoon before the continued hearing date) to file Brinkley's opposition, explaining to the trial judge at the hearing the next morning that "it seemed like it was better" to file the opposition late rather than to seek another extension.

After hearing argument, which included the trial court affording counsel an opportunity to show good cause for his failure to file the opposition on time, or to continue the matter yet again, the court took the motion under submission.  Thereafter, the court issued an order striking Brinkley's late-filed opposition, denying the oral request for a continuance made at the hearing, finding that the Defendants had met their threshold burden of demonstrating the absence of disputed issues of material fact as to each of Brinkley's causes of action, and granting summary judgment because Brinkley had not demonstrated any disputed issues of material fact.

3

On April 15, 2019, Brinkley filed her notice of appeal, but the pattern of missed deadlines and attendant delay continued. The appeal was initially dismissed for Brinkley's failure to designate and file the record. She then waited seven months before seeking to reinstate the appeal. Over the vigorous objection of Defendants, the appeal was reinstated on February 10, 2020, only to be dismissed again on September 15, 2021, when Brinkley failed to file her opening brief. Following yet another reinstatement of the appeal, and the completion of briefing on June 9, 2022, the matter was set for oral argument on September 20, 2022. Thus, nearly four years have elapsed since the date of the court order we are asked to review.

On the merits, Brinkley argues that the trial court abused its discretion by striking her untimely written opposition to the summary judgment motion, and that numerous disputed issues of fact exist with respect to the motion itself. However, we find no abuse of discretion in the order striking the untimely filing, nor legal error in the decision to grant summary judgment, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Brinkley's Interactions with CSUN

Brinkley suffers from a number of learning disabilities affecting her ability to process information. She applied for and was admitted to CSUN and before beginning her studies Brinkley contacted DRES, which is the university's office that reviews requests by, and approves accommodations for, students with learning disabilities. After she enrolled, she met with DRES counselor Smith, at which time Brinkley requested specific accommodations to assist her with her studies; namely, audiobooks, a note-taker, extra time to complete tests, and a

4

private room for tests. Based on information provided by Brinkley, Smith determined she was eligible to receive shared class notes (that is, notes taken by another student), priority registration, extra testing time, a private room for tests, and a "[t]echnology [c]onsultation." Brinkley was not completely satisfied with the extent of the accommodations made by CSUN. For example, rather than provide and pay for an individual to take notes in all of her classes, CSUN expected Brinkley to share notes prepared by another student, which meant Brinkley had to request assistance from a fellow student in each of her classes. In another instance, Brinkley asserts that an important reference book was not available in audio format, which made it challenging for Brinkley to complete a writing assignment. Nonetheless, Brinkley never requested that DRES reconsider any of the accommodations for which she was not approved. Brinkley herself acknowledged in an email to Smith on October 6, 2013, that she "didn't complain" about difficulties with note takers and testing accommodations. In her deposition, she testified that the only accommodation that she sought that was not provided was for an extension of time to submit the essay.

As noted above, the specific events that prompted this litigation commenced on October 3, 2013, when Brinkley requested an extension on a three-page essay the evening it was due. The request was sent by email to Thompson, noting that "[i]t's fine" if the extension was denied.[2] It does not appear that

---

[2] The professed reason for Brinkley's inability to complete the three-page paper by the deadline was her difficulty with the Chicago manual of style citation protocol required by Thompson. However, the assignment only required Brinkley to "reflect on [her own] journal entries and write a three-page paper relating

5

Thompson responded before the midnight deadline, but she did respond on Sunday, October 6, stating "Unfortunately, I received your email too late to discuss an extension with you before the paper deadline had passed. I do not give extensions that are requested shortly before or after an assignment's deadline." That evening Brinkley responded: "That's for your assistance in my sickness. Your [*sic*] unethical in behavior. I sent a request to civil rights for help and I will wait to hear from DRES."

Several points seem clear from this record. First, Brinkley's email on the evening of October 3 was not an unqualified request for an extension, nor for an accommodation based upon a learning disability. Second, the absence of a response in the hours between Brinkley's email and the midnight deadline was not a rejection of her request for an extension. As Thompson explained in her email on October 6, she did not become aware of the request until after the deadline had passed. Third, Brinkley's contention that she "had a huge anxiety attack one hour before upload with no allowed extension" which she later contended resulted in unconsciousness could not have been triggered by a denial of her belated request for an extension. Any anxiety was caused by the lack of a response within the few hours before the deadline following her belated request.

On October 12, 2013, in an email to Smith, Brinkley wrote concerning the essay extension issue, "This teacher is a bitch." This resulted in Brinkley being referred by DRES to Lingrosso, for a violation of CSUN's student conduct code. Lingrosso

---

them to the unit's readings." Given that the only reference materials that would be required for the paper were the readings already contained in and appropriately cited in the class syllabus, the "11th hour" request was not compelling.

decided not to impose any discipline on her but did require her to write a letter of apology to Thompson, something that took several weeks to resolve because Brinkley's first draft was not acceptable and because she resisted coming on campus to meet Lingrosso to discuss the matter until November 30, 2013. On November 4, 2013, Brinkley filed a police report alleging that she had been harassed by CSUN, and specifically complaining of Lingrosso's request to meet with her in person. Brinkley missed a number of classes during this period, and ultimately, on December 9, 2013, she applied for a medical withdrawal, which was granted on December 13, 2013. The record includes a note from Dr. Cyrus K. Mody, Brinkley's treating physician who signed her request for medical withdrawal from CSUN. In his note, Dr. Mody informs CSUN that Brinkley "would like to withdraw from all her classes this semester." In his deposition, Dr. Mody testified that Brinkley informed him that she wanted to withdraw. As far as the record available to us shows, she has never returned to CSUN to complete her degree, although it appears that she later enrolled in an online program at Pennsylvania State University.

## B.    Proceedings Below

Brinkley filed suit against Defendants, alleging various claims including violations of the ADA, the Rehabilitation Act, the Unruh Act, as well as causes of action for negligence, negligent misrepresentations, and intentional infliction of emotional distress. Successive demurrers and subsequent

7

amendments resulted in Brinkley's second amended complaint, the operative pleading.[3]

CSUN and the individual Defendants moved for summary judgment or summary adjudication. The motion was accompanied by a separate statement of undisputed facts that reiterated the same 38 facts as to each of Brinkley's causes of action. In summary, facts one to eight described Brinkley's admission to CSUN and, in general terms, how DRES worked with students, facts nine to 14 described Brinkley's initial requests for accommodations from DRES, facts 15 to 25 described DRES's efforts to respond to Brinkley's concerns about the accommodations she received, particularly with respect to obtaining shared class notes, facts 26 to 33 describe CSUN's response to Brinkley's email referring to professor Thompson as a "bitch," and facts 34 to 38 describe Brinkley's voluntary medical withdrawal from CSUN. These facts established a prima facie case that CSUN had a policy with respect to accommodating students with learning disabilities, that CSUN followed that

---

[3] Thompson, Lingrosso and Myers successfully demurred to the fifth and sixth causes of action in Brinkley's second amended complaint. The remaining causes of action in the second amended complaint are as follows: first cause of action for violation of the ADA against CSUN only; second cause of action for violation of the Rehabilitation Act against CSUN only; third cause of action for violation of the Unruh Act against all Defendants; fourth cause of action for negligence against the individual Defendants only; fifth cause of action for negligent misrepresentation against Smith and Johnson only; and the sixth cause of action for intentional infliction of emotional distress against Smith and Johnson only. Brinkley is not appealing prior orders resulting in dismissals of claims or parties.

8

policy in making accommodations to Brinkley; that Brinkley initially made no complaints about the accommodations offered her; that CSUN attempted to work with Brinkley when she made known her difficulties in obtaining shared notes; that Lingrosso followed CSUN's policy with respect to Brinkley's email referring to Thompson as a "bitch"; that Brinkley voluntarily withdrew from CSUN for medical reasons, which reasons were not the result of emotional distress; and that Brinkley was free to re-apply to CSUN if she wished to do so. The motion was supported by declarations from Smith, Johnson, and Lingrosso, a declaration from CSUN administrator Elizabeth Adams confirming that Brinkley was free to re-apply to CSUN, and deposition testimony from Brinkley herself as well as Dr. Mody.

The motion was initially set for hearing on July 25, 2018, which meant that Brinkley's opposition was due on July 11. On July 11, 2018, Brinkley filed an ex parte application for a continuance of the hearing date, and an extension of time to file her opposition, citing her counsel's health. The trial court granted the ex parte application, continuing the hearing on Defendants' motion to August 23, 2018, and extending the date for Brinkley to file opposition until July 31, 2018. July 31 came and went, but Brinkley filed nothing. In fact, it was not until August 22—literally the eve of the hearing on Defendants' motion—that Brinkley's counsel filed and served her opposition papers. The next morning Brinkley's counsel appeared for the hearing on Defendants' motion. When queried by the court, he offered no excuse for the untimely filing other than the lack of air conditioning in his home office and his own lack of recent experience with summary judgment procedure. When asked why he had not sought a further extension of time to prepare and file

9

the opposition, counsel responded that it appeared that the best course was to file when he did and beseech the court for a further continuance.

After some discussion of how best to proceed, the trial court took the motion under submission. Soon thereafter, Brinkley filed an unauthorized supplemental brief urging the court to consider her untimely opposition papers and, later, an ex parte application requesting that the court accept her late opposition papers, and that it accommodate the moving parties by continuing the hearing and affording them an opportunity to reply. In a minute order dated October 3, 2018, the trial court denied Brinkley's ex parte application and granted the motion for summary judgment. In its detailed order granting summary judgment, the trial court expressly struck Brinkley's untimely opposing papers.

## DISCUSSION

### A. Appealability and Standards of Review

The court entered judgment on February 6, 2019. Defendants served notice of entry of judgment on Brinkley on February 13, 2019, and Brinkley filed a timely notice of appeal on April 15, 2019. We have jurisdiction to review the grant of summary judgment under Code of Civil Procedure section 904.1, subdivision (a)(1). We have jurisdiction to review the order striking Brinkley's late-filed opposition papers, as part of our appeal from the judgment itself. (Code Civ. Proc., § 906.)

We review the trial court's order striking Brinkley's untimely opposition papers for abuse of discretion. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765 [trial court enjoys "broad discretion" "to refuse to consider papers served and filed beyond the deadline without a prior court order finding good

10

cause for late submission"].)  We apply a de novo standard of review to the order granting summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale.  (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)  On appeal from a summary judgment, we apply the same three-step process as the trial court.  "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought."  (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159.)  We then examine the moving party's motion.  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra,* at p. 850.)  Provided the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* at p. 849.)

## B.    The Trial Court Did Not Abuse its Discretion by Striking Brinkley's Untimely Written Opposition

We first address the trial court's decision to strike Brinkley's written opposition to the motion for summary judgment.  We find no abuse of discretion by the trial court.

Code of Civil Procedure section 437c, subdivision (b)(2) provides that opposition papers "shall" be filed "not less than 14 days preceding the noticed or continued date of hearing, unless

11

the court for good cause orders otherwise." Here, the record reflects that Brinkley requested and received an extension of time, based on her counsel's showing of a medical issue. However, Brinkley allowed the continued filing deadline to pass without filing anything on the date ordered. Rather than request a further extension of time, she simply waited until the eve of the scheduled hearing, well after the date when Defendants' reply papers would have been due, and with no regard for the fact that the trial court would have no time to review her papers prior to the hearing. Nonetheless, the trial court afforded Brinkley an opportunity to be heard as to her reasons for filing late papers. Counsel's reasons were not compelling. "The reason—when the substantial portion was done, and it got close to the due date, we're working in very adverse—I work in very adverse conditions, huge temperature, out-of-a-home office, no air, exhaustion—and it seemed like it was better to attempt to get it filed as close as possible rather than come in and file for further extension."[4]

The trial court rightly noted that counsel's decision to file papers the day before the hearing, rather than request a further extension of time, presented no "legal excuse" and did not amount to a showing of good cause. The court took the motion under

---

[4] At oral argument on this appeal, Brinkley's counsel for the first time suggested that he had faced challenges in preparing and filing Brinkley's declaration in opposition to the summary judgment motion due to her disabilities. The suggestion, made in response to a question from the panel, lacks any evidentiary support and there is no indication in the record that it was ever raised in the trial court. We thus will not consider it at this late stage of the proceedings. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830.)

submission while determining how to respond to Brinkley's failure to file a timely response. Ultimately, the court elected to strike Brinkley's untimely opposition papers as part of his order granting Defendants' motion for summary judgment.[5] The court specifically found that Brinkley had not shown a legal excuse for her failure to file timely opposition, and that she should have sought a further extension if one was necessary.

From our own review of the record, it is clear that the court acted well within its discretion. The summary judgment motion filed on April 20, 2018, was not overly complex. It was predicated on 38 facts that the moving parties contended were undisputed, related to the accommodations afforded to Brinkley by CSUN and

---

[5] Brinkley argues that, while her memorandum opposing the motion might have been untimely, "a separate deadline" governed her other opposing papers such as her request for judicial notice and objections to evidence. This contention is erroneous. Code of Civil Procedure section 437c, subdivision (b)(1) makes clear that Brinkley's request for judicial notice was required to be filed along with her opposition memorandum, while subdivision (b)(2) of the statute imposes the same deadline on her separate statement of disputed material facts. Rule 3.1350(e) of the California Rules of Court makes clear that a party's opposition to a motion for summary judgment consists of four captioned documents, including the memorandum in opposition, separate statement in opposition, and, where appropriate, evidence and request for judicial notice in opposition. Finally, rule 3.1354(a) of the California Rules of Court provides that all written objections to evidence in support of a motion for summary judgment "must be served and filed at the same time as the objecting party's opposition or reply papers are served and filed." Thus, Brinkley's default encompassed all of her opposition papers, not just the memorandum itself.

13

the events related to the essay-extension request and its aftermath.[6]  The lack of complexity is confirmed by Brinkley's own late-filed opposition, which relied principally on a declaration by Brinkley herself.  She also included a declaration by her counsel (which attached discovery responses) and a three-page declaration from a treating psychiatrist, who started treating Brinkley nine months after she had withdrawn from CSUN.  None of these declarations presented discernable challenges to preparing and filing the opposition in a timely manner by the extended deadline set by the trial court.

We also note two things of significance regarding the psychiatrist's declaration.  First, it was executed on July 26, 2018, nearly a month before the opposition was filed, so the belated filing of the opposition the day before the hearing cannot be attributed to the difficulty of getting this witness to execute the declaration.  Second, the opinion the psychiatrist expressed would have been properly excluded for failure to meet the minimum standard of admissibility for medical opinion, even if the court had not stricken the entire opposition as untimely.  The crux of the declaration was that Brinkley's physical issues that led to her hospitalization in October 2013 "could have been caused by psychological causes [*sic*] connection to her assignment extension denial rather than pre-existing physical problems."  Apart from the fact that the psychiatrist had not begun treating Brinkley until August 2014, well after the events in question, her opinion falls far short of the threshold of reasonable medical

---

[6] These same facts were presented for each of the causes of action that were being challenged in the motion for summary judgment.

14

probability (as opposed to mere conjecture) for admissibility of such opinion evidence.  (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 ["The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.  Mere possibility alone is insufficient to establish a prima facie case"]); 1 Witkin, Cal. Evidence (5th ed. 2022) Opinion Evidence, § 46.)

In finding that the trial court acted within the scope of its discretion we are mindful of the overarching goal in our judicial system to resolve cases on their merits.  The trial judge was also fully aware of this, and his comments reflect a judicious balancing of that goal against the imperative of managing cases (as trial courts are expected to) in an efficient manner that provides all litigants with timely justice and due process and enforcing procedural rules unless there is good legal cause for not doing so.

"The Court:  . . . I want all my cases, every case in my courtroom, to be decided on the merits.  But there is a big due process problem when an opposition is filed the day before the hearing."

"The Court:  . . . What I thought you were going to give me some legal reason why you couldn't get it to me sooner other than you have been working really hard.  That's not a legal excuse.  The problem is the courts function with a procedure in place, because [California R]ules of [C]ourt and [Code of Civil Procedure] delineate when motions, opposition and replies are filed so due process can be followed; so that it can exist; so that the other side has a chance to file a reply; so the court has a chance to read the papers and make a cogent decision."

"The Court: . . . If the court were to allow this without any explanation at all that's good cause for having filed it the day before, the courts wouldn't function from a policy standpoint. None of us could get any work done, because we would be holding on and keeping our fingers crossed that opposition would not be filed at the last moment and we would have [n]o time to hear a reply."

The deadline for filing opposition papers on motions for summary judgment is generous, but it is also mandatory absent a showing of good cause. (Code Civ. Proc., § 437c, subd. (b)(2).) There are also procedures available to mitigate unfairness such as Code of Civil Procedure section 437c, subdivision (h) (continuance to permit discovery necessary to gather facts to contest motion). We deem Brinkley's untimely response to be "more than a mere defect in the opposition papers." (*Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 961.) It necessarily follows that the trial court did not abuse its discretion by enforcing the deadline for Brinkley to oppose Defendants' summary judgment motion. "Section 437c, subdivision (b)(2) of the Code of Civil Procedure requires opposition papers to be filed and served 14 days before the hearing, unless the court orders otherwise for good cause. 'A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission.' [Citation.]" (*MacKey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657; see also *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 624-625, disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6; *G.E. Hetrick & Associates., Inc. v.*

16

*Summit Construction & Maintenance Co.* (1992) 11 Cal.App.4th 318, 325, fn. 4.)

Notwithstanding the cases holding that the trial court is within its discretion to strike untimely papers, including papers opposing a summary judgment motion, Brinkley asserts that the trial court's order striking her opposing papers was an abuse of discretion because it ignored the availability of less severe sanctions. The cases Brinkley relies on do not support her position. For example, Brinkley cites *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364, footnote 16, for the proposition that it is an abuse of discretion to grant summary judgment based upon a litigant's "procedural error." *Elkins* involved a pro per litigant who ran afoul of local court rules that conflicted with provisions of the Family Code, Code of Civil Procedure and the Evidence Code, and who succeeded in challenging those rules by writ of mandate. The aggrieved plaintiff in *Elkin*s had not, however, consciously disregarded a filing deadline that had already been continued once at her request.

As pointed out in *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1215, another case cited by Brinkley and quoted with approval in *Elkins*, there is no abuse of discretion where the party's violation of a procedural rule was " 'willful.' " (*Elkins v. Superior Court*, supra, 41 Cal.4th at p. 1364, fn. 16.) The same principle applies here. Counsel made a deliberate choice to disregard a court-ordered deadline to file Brinkley's opposing papers and not seek a further continuance before the hearing. To the same effect is *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, still another case cited by Brinkley. There, the Court of Appeal affirmed a grant of summary judgment against parties who failed to submit a legally

17

sufficient separate statement after being afforded a continuance in order to do so. "[Opposing parties] were afforded an opportunity to cure the defects in their papers, and the trial court granted the motion only after their failure or refusal to take advantage of that opportunity. They were not entitled to a third opportunity to try to file conforming papers . . . ." (*Id.* at p. 75.)

In our case, Brinkley was "afforded an opportunity to cure" her inability to meet the initial deadline to oppose the summary judgment motion when the court granted a continuance on July 11, 2018. Without any legal excuse for doing so, counsel chose not to take advantage of the opportunity afforded by the trial court or to attempt to show good cause for yet another extension before the expiration of the new filing deadline, or even before the new hearing date. The trial court here, like the one in *Collins v. Hertz Corp.*, *supra*, 144 Cal.App.4th 64, did not abuse his discretion by denying Brinkley a third opportunity to submit timely opposition papers.

## C.     The Trial Court Properly Granted Summary Judgment on Brinkley's Causes of Action

The trial court's duty when deciding a defendant's summary judgment motion is to determine whether the defendant has established the nonexistence of at least one element of each claim for relief asserted by the plaintiff. (See Code Civ. Proc., § 437c, subd. (o)(1).) If the defendant does so, the burden shifts to the plaintiff to show, with evidence, one or more triable issues of material fact as to that cause of action. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780-781.) This is the point at which the consequence of Brinkley's failure to file timely opposition to Defendants' summary judgment motion becomes manifest. "It is well settled that 'in reviewing a

18

summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal. [Citations.]' " (*Sacks v. FSR Brokerage, Inc.*, *supra*, 7 Cal.App.4th at p. 962, quoting *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.) In *Sacks*, the plaintiff elected not to oppose the defendants' summary judgment motion on the merits, asserting that notice and service were defective. The trial court rejected those contentions and granted the motion. On appeal, the plaintiff's attempt to argue facts and evidence he had deliberately chosen not to present to the trial court was rejected: "Any substantive issues or factual assertions [the plaintiff] may have to support his complaint which are supported by his deposition could have been argued on the merits to the trial court. [The plaintiff] failed to do so at trial and cannot now belatedly argue such matters on appeal." (*Sacks*, *supra*, at p. 963.)

Although the plaintiff in *Sacks* elected not to oppose a summary judgment on the merits, Brinkley's opposition papers were struck because she deliberately waited until (literally) the eve of the hearing to file and serve her opposition papers instead of seeking a continuance. We find no meaningful distinction between Brinkley's situation and that faced by the plaintiff in *Sacks*, and the resulting prejudice to the court and opposing party, who were left with no time to reply. Thus, we will apply the same rule, and disregard Brinkley's statement of material disputed facts, her proffered evidence, including her request for judicial notice, and her objections to Defendants' evidence, all of

19

which we deem waived.[7]  We confine our review to Defendants'
separate statement and supporting evidence in order to
determine whether Defendants were entitled to summary
judgment.  We conclude that they were.

1.     *First Cause of Action for Violations of the ADA*

Brinkley's first cause of action alleges that CSUN violated
the ADA by "not providing promised reasonable accommodations
to [Brinkley] despite her learning disabilities."  "In order to prove
a claim for discrimination under Title II of the ADA, a plaintiff
must show: (1) that he is a qualified individual with a disability;
(2) he was either excluded from participation in or denied the
benefits of a public entity's programs, benefits or services; and
(3) the public entity's conduct occurred by reason of his disability.
[Citations.]"  (*Black v. Department of Mental Health* (2000) 83
Cal.App.4th 739, 749.)

CSUN challenged this cause of action by introducing
evidence rebutting the second and third elements of the cause of
action—namely, that she was not excluded from her chosen
academic program at CSUN, and that she was not discriminated
against by reason of a disability.  Specifically, CSUN introduced,
and the trial court considered, a declaration by Smith, a
counselor DRES, who met with Brinkley and set up

---

[7] Throughout her briefs Brinkley also cites her own
complaint in this action as evidence demonstrating the existence
of disputed material facts.  It is well settled that a party cannot
reply on her own pleading, in opposition to a motion for summary
judgment, to show the existence of a disputed material fact.
(*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176,
181.)  Accordingly, we have disregarded Brinkley's citations to
her own complaint where they appear in her appellate briefs.

accommodations including shared class notes, priority course registration, a private room for taking tests, and a technology consultation. Johnson, the director of DRES, declared that she personally sent a student to take notes for Brinkley after learning that Brinkley could not obtain notes for one of her classes, and later confirmed that Brinkley had in fact received those notes.

The evidence further establishes that Brinkley was not "excluded" from CSUN itself by reason of her disability. To the contrary, Dr. Mody wrote a note stating that Brinkley wished to withdraw for medical reasons, and testified not only that she told him she wished to withdraw, but also that her medical condition was not caused by Brinkley's alleged emotional distress. Adams testified in her declaration that Brinkley had been granted a medical withdrawal from CSUN at her own request, that Brinkley could have returned to CSUN during the following two semesters, or applied to extend that time to return, but had not done so, and that she could nonetheless re-apply for admission to CSUN at any time.

The evidence adduced by CSUN was sufficient to establish that CSUN attempted to meet Brinkley's requests for accommodations, and that she was not excluded from CSUN itself or from her chosen academic program by reason of being disabled. This showing was sufficient to shift to Brinkley the burden of showing the existence of one or more material disputes of fact going to the second or third elements of her cause of action. Brinkley forfeited her opportunity even to attempt such a showing, because she failed to file timely opposing papers and the trial court (justifiably) struck her untimely opposition. In the

21

absence of any showing of triable disputes of fact, the trial court correctly decided this cause of action in favor of CSUN.

2.    *Second Cause of Action for Violations of the Rehabilitation Act*

Brinkley's second cause of action accuses CSUN of violating the Rehabilitation Act, again "by not providing promised reasonable accommodations to [Brinkley]." This cause of action requires Brinkley to show she was (1) a qualified individual under the act, and (2) that she was discriminated against solely because of a disability. (*Lucero v. Hart* (9th Cir. 1990) 915 F.2d 1367, 1371.) The same undisputed facts and supporting evidence CSUN relied on to rebut Brinkley's first cause of action applies here as well: the fact that CSUN extended itself to make accommodations to Brinkley, and did not exclude her from CSUN's academic programs, presents a prima facie showing that she was not discriminated against by reason of her disability. In the absence of any showing of triable disputes of fact, the trial court correctly decided this cause of action in favor of CSUN.

3.    *Third Cause of Action for Violations of the Unruh Act*

In her third cause of action, Brinkley alleges that Defendants violated the Unruh Act by "not providing promised reasonable accommodations to [Brinkley] despite her learning disabilities." The Unruh Act provides, in pertinent part, that all persons in California "are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability,[8] medical condition, genetic information, marital

---

[8] The Unruh Act defines " 'disability' " as "any mental or physical disability as defined in [s]ections 12926 and 12926.1 of the Government Code." (Civ. Code, § 15, subd. (e)(1).) As no

22

status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Subdivision (f) of section 51 of the Civil Code provides that "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

We find two defects in Brinkley's Unruh Act claim. The first is a legal one: CSUN argues, and we agree, that it is not a "business establishment" within the meaning of the act. Our Supreme Court recently held that a public school district was not a "business establishment," as that term is used in the Unruh Act. (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 679.) The plaintiff, a high school student, was sexually assaulted on school property. He brought a claim for damages under, inter alia, the Unruh Act. The school district asserted that it was not a "business establishment" within the meaning of the statute. After the trial court sustained the school district's demurrer without leave to amend, the plaintiff sought a writ of mandate from the Court of Appeal. In a published opinion, the Court of Appeal denied the petition and held that the trial court was correct that the school district was not a "business establishment." On review, the Supreme Court affirmed. In a lengthy examination of the history of the Unruh Act, the court held that the Unruh Act applied to "entities operating as private businesses," not to government entities. (*Brennon B.*, *supra*, at

---

party disputes that Brinkley is "disabled" within the meaning of this statute, we will treat her as such.

p. 679, fn. omitted.) Thus, we conclude that CSUN, in its dealings with Brinkley, was acting as a governmental entity and not a "business establishment," such that the Unruh Act does not apply.

At oral argument, Brinkley's counsel argued that *Brennon B.* was limited to, at most, public elementary and secondary school districts, but did not apply to a public university. Counsel also contended that CSUN was a "business establishment" because, inter alia, it charges tuition to its students. We disagree that CSUN becomes a "business establishment," as that term is used in the Unruh Act, because it charges money for tuition, or for books and other incidentals. Our Supreme Court was clear in drawing a distinction between "business establishments" subject to the Unruh Act, and " 'public entities or governmental agencies' " that were not. (*Brennon B. v. Superior Court*, *supra*, 13 Cal.5th at p. 678; see also *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190-1191 [Legislature made a deliberate choice when it specifically listed governmental entities within the scope of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) while limiting the Unruh Act to "business establishments"].) Brinkley's complaints arise from her status as a student at a public university operated by the State of California. We are not faced with a situation where CSUN is acting in a commercial or quasi-commercial capacity towards a member of the general public, such as a customer at the university bookstore or an attendee at a sporting event. Thus, we need not, and we do not, consider the application of the Unruh Act in those contexts. (Cf. *Curran v. Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 700, fn. omitted [Unruh Act does not reach membership decisions of the Boy Scouts, but could

24

apply to "business transactions with nonmembers engaged in by the Boy Scouts in its retail stores and elsewhere"].)

Our second ground for affirming the trial court's order is a factual one: the undisputed facts presented by Defendants present a prima facie case that Brinkley was not denied any of the "accommodations, advantages, facilities, privileges or services" (Civ. Code, § 51, subd. (b)) offered students by CSUN, on any basis, much less on the basis of her disability. She was admitted to CSUN, she requested and received a series of accommodations based on her learning disabilities, and she voluntarily withdrew from CSUN for a medical reason having nothing to do with her alleged emotional distress. Nothing in the record rebuts CSUN's showing that it is entitled to summary judgment on Brinkley's Unruh Act claim.[9] For these reasons, the court did not err in granting summary judgment to CSUN on this cause of action.

4.      *Fourth Cause of Action for Negligence*

Brinkley's fourth cause of action for negligence alleges that the individual Defendants (but not CSUN) had a duty "to timely and adequately review requests" for accommodations made by disabled individuals, as well as a duty "to grant and implement reasonable requests for accommodations from qualified disabled students," but "negligently breached their duty to implement

_____

[9] The trial court relied on other grounds to grant CSUN summary judgment on Brinkley's Unruh Act claim. "[W]here there is no genuine issue of material fact, the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court." (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)

25

such accommodations and to avoid discriminating against [Brinkley]." Brinkley's allegations of a duty of care, breach of that duty, and damage proximately caused by the breach, adequately pleads the elements of a cause of action for common-law negligence. However, Brinkley's claims for negligence run afoul of well-recognized limitations on public employee liability. Specifically, the sources of Defendants' duty of care are the ADA and the Rehabilitation Act, neither of which permits a claim for relief for personal liability on the part of government employees. (See, e.g., *Greenlaw v. Garrett* (9th Cir. 1995) 59 F.3d 994 [Title VII of the Civil Rights Act of 1964 does not provide for individual liability of government employees]; *Mahoney v. U.S. Postal Service* (9th Cir. 1989) 884 F.2d 1194, 1196, fn. 1 [remedies under Rehabilitation Act are coextensive with Title VII of the Civil Rights Act of 1964]; *Haltek v. Village of Park Forest* (N.D.Ill. 1994) 864 F. Supp. 802, 805 [no individual liability under Title VII of the Civil Rights Act of 1964, the ADA or the Rehabilitation Act].) Thus, the individual Defendants named in Brinkley's fourth cause of action have a complete defense as a matter of law, and the trial court correctly resolved this cause of action in Defendants' favor.

     5.    *Fifth Cause of Action for Negligent Misrepresentation*

In her fifth cause of action, Brinkley alleges that Johnson and Smith negligently promised Brinkley that they would "provide a variety of support services" to assist her, including a list of possible accommodations that they were in fact unable to provide. This cause of action suffers from two legal defects. First, the individual defendants appear to be immune from individual liability under Government Code section 822.2. That statute provides that "A public employee acting in the scope of his

26

employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." (*Ibid*.) The declarations provided by Johnson and Smith show that, at Brinkley's request, Smith provided certain requested accommodations to Brinkley, and Johnson arranged for a student to take notes on one occasion. These declarations demonstrate that these Defendants attempted to perform consistent with their alleged representations to Brinkley. Evidence of attempts to perform a promise demonstrates the absence of actual fraud that might otherwise defeat the Defendants' statutory immunity under Government Code section 822.2. (*Church of Merciful Saviour v. Volunteers of America, Inc.* (1960) 184 Cal.App.2d 851, 858-859 [evidence of attempts to perform demonstrate absence of fraudulent intent]; *Kaylor v. Crown Zellerbach, Inc.* (9th Cir. 1981) 643 F.2d 1362, 1368 ["Crown's initial performance in accordance with its promises negates any possible inference of fraud"].)

The second legal impediment to this cause of action lies in California not recognizing a cause of action for "negligent false promise." (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 159 ["[W]e decline to establish a new type of actionable deceit: the negligent false promise"]; see also *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 458 [same].) Brinkley expressly pleaded this cause of action in negligence rather than intentional fraud. Her complaint limits the issues on summary judgment, and on appeal we cannot assume the possibility of actual fraud in order to defeat an otherwise meritorious summary judgment motion.

27

6.    *Sixth Cause of Action for Intentional Infliction of Emotional Distress*

Brinkley's sixth and final cause of action accuses the Defendants of intentionally causing her to incur severe emotional distress, by withholding promised accommodations with knowledge that Brinkley "was emotionally fragile, that she placed great importance on succeeding and obtaining her degree from CSUN, and that she needed and expected to received [*sic*] the promised learning accommodations."

The elements of a cause of action for intentional infliction of emotional distress include " ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)  "Outrageous conduct" is conduct " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)  Initially, it is for the court to determine whether conduct is so extreme and outrageous as to give rise to a cause of action for emotional distress; where reasonable minds may differ, the question is for a jury. (*Plotnick v. Meihaus* (2012) 208 Cal.App.4th 1590, 1614.)

Here, the only *evidence* of conduct directed to Brinkley is found in the declarations proffered by Defendants.  We have already summarized the relevant portions of the declarations of Smith and Johnson, which set out only neutral, ostensibly helpful

28

acts in furtherance of the accommodations Brinkley requested.[10] In addition, even taking Brinkley's assertions at face value that she suffered extreme anxiety the night of October 3, 2013, the failure of Thompson to respond to her extension request before the midnight deadline is not conduct " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Christensen v. Superior Court, supra,* 54 Cal.3d at p. 903.)  The trial court correctly found the absence of outrageous conduct, and correctly resolved this cause of action in favor of Defendants.

**D.    Defendants' Motion Need Not Address Brinkley's Unpleaded Claims**

On appeal, Brinkley urges us to reverse the order granting summary judgment because of her claims arising out of alleged violations of CSUN's student conduct guidelines.  She argues that CSUN's imposing discipline for referring to Thompson as a "bitch" violates a stipulated order of dismissal in an otherwise unrelated federal case,[11] and also amounts to judicial estoppel.

---

[10] Brinkley's opening brief includes a heading arguing that student discipline imposed by CSUN was "outrageous" conduct. We disagree.  First, Brinkley presented no evidence on this point in the trial court, and thus there is nothing to controvert Defendants' evidence demonstrating the lack of outrageous conduct.  Second, beyond the heading in Brinkley's brief there is not a developed argument as to why the conduct in question could properly be deemed "outrageous."  We need not consider points that are raised but not developed with citations to the record and to legal authority.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.)

[11] *College Republicans at San Francisco State University et al. v. Achtenberg et al.* (N.D.Cal. 2008, 4:07-CV-03542) (*College Republicans*).

Brinkley admits that she only learned about the stipulated order in the *College Republicans* case after she filed her second amended complaint, and for that reason none of these claims is pleaded. The fact that these claims are not pleaded, however, means that Defendants did not have to address them. "The moving party need address only those theories actually pled and an opposition which raises new issues is no substitute for an amended pleading." (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 717.) Thus, "[t]he burden of a defendant moving for summary judgment only requires that he or she negate [the] plaintiff's theories of liability *as alleged in the complaint*." (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.)[12]

---

[12] As noted, *ante,* Brinkley was not in fact subjected to any discipline; she was only required to write a letter of apology to Thompson.

30

## DISPOSITION

The trial court's order granting summary judgment is affirmed.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED


                                        KELLEY, J.*


We concur:



        CHANEY, J



        BENDIX, Acting P. J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.